CATHERINE A. McILROY *vs.* JOHN V. McILROY, & trustee.

Suffolk.   March 9, 1911. — April 3, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Husband and Wife.   Separate Support.   Probate Court.   Superior Court.   Practice, Civil,* Reservation by report.   *Attachment,* Dissolved by death.   *Trustee Process.*

An order made by a judge of the Probate Court under R. L. c. 153, § 33, that a husband shall pay a certain sum of money monthly to his wife for her support, and an order made under § 35 of that chapter and R. L. c. 152, § 31, that execution shall issue for the enforcement of the order for support, are not terminated

or suspended in their operation by the resumption by the wife of cohabitation with her husband.

Although an order under R. L. c. 153, § 33, that a husband shall pay a certain sum of money monthly to his wife for her support, terminates in operation at the husband's death, yet it can be enforced against the husband's estate for arrears which accrued during his lifetime, and for this purpose the obligation is regarded as a debt of record established by a judgment.

Upon a petition to the Probate Court under R. L. c. 153, § 35, and c. 152, § 31, to enforce a previous order of that court, that a husband shall pay a certain sum of money monthly to his wife for her support, the judge of the Probate Court can consider any change in the position of the parties and any facts that have come into existence since the making of the first order, and, if he finds that justice so requires, he can order execution to issue for only a part of the unpaid arrears of the payments for support.

Upon an appeal to the Superior Court from an order made by a judge of the Probate Court for the enforcement by execution of a previous order of the Probate Court that a husband shall pay a certain sum of money monthly for the support of his wife, the Superior Court has the same power to reduce the required payments on account of a change of circumstances that the Probate Court had.

A stipulation in the report of a case reported by a judge of the Superior Court for determination by this court, that such order may be entered "as the court deems just," means that such an order shall be entered as this court find to be required by law.

The provision of R. L. c. 167, § 112, that "an attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in this Commonwealth upon an application therefor made within one year after his decease," applies to an attachment made by trustee process upon property alleged to have been fraudulently conveyed or concealed upon a petition for an execution to enforce a decree for alimony.

APPEAL to the Superior Court from a decree of the Probate Court for the county of Suffolk, dated April 20, 1909, ordering that the Chelsea Savings Bank be charged as trustee of the respondent in the sum of $805.69 and that an execution issue for the sum of $990, as the arrears due to the petitioner for her separate support under a former decree of that court dated April 21, 1892.

In the Superior Court the case was heard by *Bell*, J., without a jury. He found the following facts:

The parties were married to each other in July, 1891, and thereafter lived together until the following September, when they separated and remained apart until October, 1899. In November, 1891, the petitioner filed in the Suffolk Probate Court a petition for her separate support, and on April 21, 1892, obtained a decree that she was living apart from the respondent for justifiable cause and ordering him to pay to her for her sepa-

rate support the sum of $5 per month, beginning with the first Monday of March, 1892. In October, 1898, the respondent brought a libel for divorce against the petitioner in the Suffolk Superior Court, alleging desertion and cruel and abusive treatment. In November, 1899, while this libel was still pending and shortly before it was to be heard, the parties met, became reconciled, resumed their marital relations, and the libel was dismissed on November 10, 1899, at the request of the libellant and without a hearing thereon. From November, 1899, until May, 1900, the parties lived together as man and wife. The petitioner offered evidence, which was admitted subject to the respondent's exception, that the respondent finally deserted the petitioner in May, 1900, and that they have lived apart from each other ever since. On this evidence, subject to the exception, the judge so found.

The judge further found that the petitioner never brought against the respondent any new or other proceedings for a judicial separation, separate support or otherwise except those above described; that the parties have lived in this Commonwealth ever since their marriage; that the respondent has never made a payment to the petitioner under the decree of April 21, 1892; and that the petitioner has never sought to enforce that decree with the exception of the present proceedings.

The present proceedings were begun by a petition filed in the Suffolk Probate Court dated February 23, 1909, praying that the Chelsea Savings Bank be charged as trustee of the respondent and that an execution issue in favor of the petitioner for the sum of $1,020, as the amount remaining due and unpaid under her said decree. This petition was heard by Grant, J., who by the decree of April 20, 1909, ordered that the Chelsea Savings Bank be charged as trustee of the respondent in the sum of $805.69, and that execution should issue in favor of the petitioner in the sum of $990, that being the entire amount claimed by her from the first Monday of March, 1892, to the first Monday of March, 1909, a period of seventeen years, less the sum of $30 deducted for the interval of six months covered by the second cohabitation of the parties. It was from this decree that the respondent appealed to the Superior Court.

The judge of the Superior Court also found that during the

pendency of the appeal in the Superior Court the respondent died on or about April 14, 1910, and that David J. Maloney had been appointed administrator of his estate, and had duly qualified and had appeared in this proceeding.

The respondent [apparently as represented by the administrator of his estate] asked the judge to make the following rulings:

"1. Said decree of April 21, 1892, changed the status of the petitioner from a wife living with her husband to a wife living apart from him for justifiable cause. Separate support was an incident merely to her changed status and continued only during the existence of such status. When she returned to live with him her former status was restored and her right to separate support was lost.

"2. Said decree was an entirety and cannot by the act of the parties be so divided that the petitioner can have thereunder separate support without cohabitation a part of the time, cohabitation without separate support some of the time, and then separate support without cohabitation the rest of the time.

"3. The reconciliation of the parties and the voluntary resumption of their marital relations was a condonation and forgiveness by the petitioner of the justifiable cause for which she was living apart from the respondent.

"4. Such voluntary cohabitation was a waiver of the right of the petitioner to enforce payment of any arrears then due under said decree.

"5. Said voluntary cohabitation avoided said decree and was a bar to the accumulation and recovery of further arrears thereunder.

"6. Said decree was not suspended merely during the period of cohabitation to be revived automatically upon his subsequent desertion.

"7. To entitle the petitioner to recover for separate support for any cause occurring during or after said period of cohabitation she should have brought new proceedings therefor and established the same by sufficient evidence of a new and justifiable cause of her living apart from him.

"8. Evidence of the respondent's desertion in May, 1900, was inadmissible to revive said decree, or to enable the petitioner to recover thereunder for any arrears due at the beginning of said cohabitation or after its termination.

" 9. No such proceedings having been brought, evidence that the respondent finally deserted the petitioner in May, 1900, was improperly admitted and should have been excluded.

" 10. The arrears for separate support due under said decree, if any, at the beginning of said cohabitation do not survive the death of the respondent.

" 11. Arrears for separate support accruing under said decree after the termination of said cohabitation, if any, do not survive the death of the respondent.

" 12. The neglect of the petitioner for a period of more than fifteen years to take action to enforce said decree, under the facts set forth in this report, shall be deemed laches sufficient to bar her enforcement of said decree.

" 13. The Probate Court has no authority to charge the Chelsea Savings Bank as trustee of the respondent when it appears that the funds in its hands stand in the name of the respondent as trustee of a third person.

" 14. Upon the facts set forth in the report the petitioner is not entitled to recover."

The judge refused to make any of these rulings and made an order affirming the decree of the Probate Court. At the request of the respondent, he reported the case for determination by this court. If the rulings or any of them should have been given, the decree of April 20, 1909, was to be modified or reversed in accordance therewith; otherwise, it was to be affirmed or such other order was to be made " as the court deems just."

*W. P. Holcombe*, for the respondent.

*W. J. Williams*, for the petitioner.

SHELDON, J. It is not denied that the Probate Court had the power under the provisions of R. L. c. 153, § 33, to make its order for the payment by the respondent of a monthly sum to the petitioner his wife ; and § 35 of the same chapter, by reference to R. L. c. 152, § 31, authorizes that court to issue execution for the enforcement of its order. But the respondent contends that the order was annulled and avoided, or at the least that it was made incapable of enforcement, without any further order of the court, by the act of the petitioner in resuming cohabitation with her husband.

As this statute merely provides " a new method of enforcing

a right growing out of marriage, which was enforced by an order for alimony after a divorce from the bonds of matrimony, or a divorce from bed and board, or after the commencement of proceedings to obtain a divorce " (*Bucknam* v. *Bucknam*, 176 Mass. 229, 230), it may be assumed that the same rules which govern an order for alimony made by a divorce court are to be applied to the original order of the Probate Court which was the foundation of this proceeding. There is authority in some jurisdictions for the contention that a reconciliation of husband and wife after a decree for a judicial separation and for the payment of alimony will of itself annul the decree so that a claim for alimony no longer can be supported, even after a subsequent separation, without a new order having been obtained upon a new suit. *Tiffin* v. *Tiffin*, 2 Binn. 202. *Succession of Liddell*, 22 La. Ann. 9. And see the cases collected in 9 Am. & Eng. Encyc. of Law, (2d ed.) 852.

But the practice in England arose from the form of the decree, which provided for a separation until the parties should have become reconciled, and was continued in some of our States under the language of statutes which were construed to fix the same limit. See the opinion of Vice Chancellor Green in *Jones* v. *Jones*, 29 Atl. Rep. 502, containing an elaborate discussion of the question. In States in which no such limit has been fixed but provision has been made by statute for further action by the courts and the revision or modification of such a decree upon the application of one or both of the parties, it has been held, in accordance with what seems to us to be the sound reason, that the decree is not annulled, either permanently or temporarily, by the reconciliation or renewed cohabitation of the parties or by the act of one of them in condoning the misconduct of the other, but that these circumstances, like any other change in the situation of the parties, simply afford ground for new action of the court, by annulling, revising or altering its former order as justice may require. This was so held in New Jersey in the case of *Jones* v. *Jones*, *ubi supra*, and again in New York, in renewed litigation between the same parties, in *Jones* v. *Jones*, 90 Hun, 414. The same rule was declared in *Hobby* v. *Hobby*, 5 App. Div. (N. Y.) 496, citing and following the cases just referred to. It was acted on by this court in *Albee* v. *Wyman*, 10 Gray, 222, 229, and in

California in *Wade* v. *Wade,* 31 Pac. Rep. 258, in which cases it was held, not that the second marriage of the wife or the return to cohabitation of the separated couple of itself annulled the decree for alimony, but that these facts warranted the court in revoking and refusing to enforce the previous decree.

This rule must govern the case at bar. The statute expressly provides that the court after having made its order, " may from' time to time " upon application of either party " revise or alter such order or make a new order or decree " as circumstances may require. The manifest intention of the Legislature was that the order should not be vague and indefinite in its duration, liable to be abrogated or annulled by the mere act of the parties, and to be upheld or overthrown as parol evidence might establish or fail to establish conduct of the parties more or less inconsistent with the grounds upon which it was based, but that the order once made should continue in force until revised or altered by the court itself upon proper application and after due hearing. *Allen* v. *Allen,* 100 Mass. 373, 374, 376. *Graves* v. *Graves,* 108 Mass. 314, 321. *Sparhawk* v. *Sparhawk,* 120 Mass. 390. *Southworth* v. *Treadwell,* 168 Mass. 511.

The right of the wife to enforce this order was not permanently taken away by her return to her husband. The order might have been made though she never had left his house. *Bucknam* v. *Bucknam,* 176 Mass. 229. We do not know upon what findings of fact the order was based. But it follows from the decision just cited that her right to obtain and to enforce the order was not necessarily destroyed by the fact that she had returned to his home. It is immaterial here that suits between husband and wife are not authorized by R. L. c. 153, § 6.

While this order for the support of the wife would cease at her death, it can be enforced against the husband's estate after his death for arrears incurred during his lifetime. It is for this purpose regarded as a debt of record established by a judgment. *Knapp* v. *Knapp,* 134 Mass. 353. The liability for unpaid alimony may not, strictly speaking, be a debt within the legal meaning of that word. *Allen* v. *Allen,* 100 Mass. 373. *Chase* v. *Ingalls,* 97 Mass. 524. *Barclay* v. *Barclay,* 184 Ill. 375. *In re Nowell,* 99 Fed. Rep. 931. *Audubon* v. *Shufeldt,* 181 U. S. 575, 577, cited and approved in *Leyland* v. *Leyland,* 186 Mass. 420,

421. But it gives to the wife in proceedings like this the right as a creditor to enforce payment in the same manner and to as great an extent as if she were a creditor in the most exact sense of that word. *Chase* v. *Chase,* 105 Mass. 385. *Purdon* v. *Blinn,* 192 Mass. 387. *Shepherd* v. *Shepherd,* 196 Mass. 179. *Hill* v. *Hill,* 196 Mass. 509. Upon this petition, addressed to the court which made the original order, that court could consider any change in the present position of the parties and any facts that had occurred since the making of the first order, and if it found that justice so required, could order execution to issue for only a part of the unpaid arrears. *Knapp* v. *Knapp,* 134 Mass. 353, 357. It was doubtless upon this ground, and not, as the respondent has contended, upon any theory that the operation of the order had been suspended while the parties lived together, that the Probate Court based its conclusion as to the amount named in the order appealed from ; and this as a matter of law was correct. And the Superior Court upon the appeal had the same power as the Probate Court. *Smith* v. *Smith,* 184 Mass. 394.

It follows that the rulings requested by the respondent were rightly refused. They were all either wrong as matter of law or wholly immaterial to the case on trial.

But under the terms of the report such order is now to be made as to the court seems just, which means of course such order as we find now to be required by law. One circumstance appears in the report which, although it has not been argued by the counsel, we do not feel at liberty to disregard.

During the pendency of the appeal, on or about April 14, 1910, the respondent died, and an administrator of his estate was appointed, who has appeared and defended the case. It is provided by R. L. c. 167, § 112, that any "attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in this Commonwealth upon an application therefor made within one year after his decease." It sufficiently appears from the date stated that the application for administration must have been made within a year after the death. Therefore the attachment, though made by trustee process and though it seems to have been made upon property alleged to have been

fraudulently conveyed or concealed by the respondent, was dissolved. *Parsons* v. *Merrill,* 5 Met. 356. *Wilmarth* v. *Richmond,* 11 Cush. 463. *Dunbar* v. *Kelly,* 189 Mass. 390. *Newburyport Institution for Savings* v. *Puffer,* 201 Mass. 41.

The decree of the Probate Court must be modified by striking out that part of it by which the Chelsea Savings Bank was charged as the trustee of the respondent, and so modified must be affirmed.

*So ordered.*