RUSSELL W. BOETTIGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61891. Filed November 28, 1958.

*William E. Russell, Jr., Esq.*, and *Joseph B. Miller, Esq.*, for the petitioner.

*Scott A. Dahlquist, Esq.*, for the respondent.

FORRESTER, *Judge:* The Commissioner has determined the following deficiencies in petitioner's income tax:

| Year | Deficiency |
| --- | --- |
| 1952 | $3,384.29 |
| 1953 | 3,850.33 |
| 1954 | 3,216.64 |

The issues for decision are:

1. Whether the New Jersey decree here involved effectuates the legal separation required by section 22 (k) of the 1939 Code and 71 (a) (1) of the 1954 Code so as to allow the petitioner to deduct payments, made according to an agreement that was incorporated in such decree, under section 23 (u) of the 1939 Code and section 215 of the 1954 Code.

2. Whether an agreement, which was incorporated in an interlocutory divorce decree, fixes an amount payable for the support and maintenance of the petitioner's daughter so as to render that amount nondeductible under section 71 (b) of the 1954 Code.

3. Whether the petitioner has provided more than one-half of the cost of his daughter's support and maintenance so that he can claim her as a dependent and thus get the resulting $600 exemption for the years 1952, 1953, and 1954.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

The petitioner was in each of the calendar years 1952, 1953, and 1954, and is now, a citizen of the United States, residing in Glen Ridge, New Jersey. During 1952, 1953, and 1954, the petitioner was

on a calendar year basis and he filed his returns with the director of internal revenue at Newark, New Jersey.

The petitioner married Elaine N. Boettiger (hereinafter called Elaine) on June 14, 1941, and a daughter was born of this marriage on December 22, 1942. From and after October 1945, the petitioner and his wife have continuously lived in a state of separation from each other.

A separation agreement, dated January 7, 1952, was entered into by the petitioner and his wife, the pertinent parts of which are:

This AGREEMENT made * * * between ELAINE N. BOETTIGER, * * * "wife", and RUSSELL W. BOETTIGER, * * * "husband", WITNESSETH:

* * * * * * *

WHEREAS, divers disputes and unhappy differences have arisen between the parties hereto and they have lived in a state of separation for approximately six years;

Now, THEREFORE, * * * the said parties do hereby agree with each other as follows:

1. The husband agrees to pay to the wife, who has agreed to accept, payments in the amounts and manner hereinafter provided from the husband's current annual gross income from salary and bonus, said payments to commence on January 15th, 1952 for a period of five years, the last payment to be made on December 15th, 1956, as and for the support and maintenance of the wife, and said payments when paid, together with the faithful performance by the husband of all terms and provisions of this agreement, shall be considered by the wife as a complete discharge of any and all obligation of the husband of any duty which may now or hereafter be imposed upon him for her support, maintenance or alimony, should her right to alimony be hereafter established. For the purpose of computing the amount of said payments, those to be made in each calendar year shall be predicated upon twenty-eight (28%) percent of the husband's gross income from salary and bonus received by him during the preceding calendar year, and said payments as so determined shall be made in twelve (12) equal monthly installments on the 15th of each and every month. In no event, however, shall the amount of such monthly payments be less than the full sum of Five Hundred and Eighty-five ($585.00) Dollars, anything herein to the contrary notwithstanding. * * * the wife agrees out of said payments to support and maintain their daughter Diane, except for necessary and reasonable medical, dental or hospital expense for Diane as hereinafter provided.

In the event of the remarriage of the wife prior to December 15th, 1956, these payments shall thereupon terminate and the payments of Two Hundred ($200.00) Dollars a month for the support and maintenance of Diane shall then commence as hereinafter provided.

2. In addition to the payments set forth in paragraph 1 hereof, the husband agrees to pay to the wife a lump sum of Seven Thousand ($7,000.00) Dollars, * * *

* * * * * * *

3. The husband agrees to pay and the wife has agreed to accept monthly payments of Two Hundred ($200.00) Dollars commencing January 15th, 1957, as and for the support and maintenance of their daughter Diane, said monthly payments to continue until Diane attains her twenty-first birthday or until her marriage or death, whichever event should first occur. In addition to the said payments in this and the preceding paragraphs provided, the husband agrees to pay any and all necessary and reasonable medical, dental and hospital ex-

penses for treatment and services rendered to their daughter Diane, if he is notified in advance by the wife or someone on her behalf of the nature of and necessity for such treatment and the identity of the doctor or hospital. The aforesaid agreement on the part of the husband to pay medical or dental expenses shall not apply to an isolated or an incidental medical or dental treatment, nor shall the requirement of notification apply to emergency treatment or expense.

\*　　\*　　\*　　\*　　\*　　\*　　\*

6. The husband has been notified by the wife that she may move out of the State of New Jersey and probably to either Arizona or California, and he does hereby consent to the same, and to her taking their daughter Diane in her custody, subject to the right of reasonable visitation by the husband. The parties hereto concede that part of the sum of Seven Thousand ($7,000.00) Dollars specified in paragraph 2 is to be utilized for expenses and costs to enable the wife and their daughter Diane to establish a home out of the State of New Jersey.

\*　　\*　　\*　　\*　　\*　　\*　　\*

8. The wife hereby agrees that she will not pledge her husband's credit in any wise, nor impose or cause to be imposed any liability upon him from and after the making of this agreement, the payments herein provided being mutually intended to be in full settlement of any obligation of the husband to the wife and daughter and shall be in full discharge of his obligation to the wife as husband.

Thereafter, on January 8, 1952, the Superior Court of New Jersey, Chancery Division, Essex County, entered the following "Final Judgment":

| | |
|---|---|
| Elaine N. Boettiger,<br>　　　　*Plaintiff*<br>　　*vs.*<br>Russell W. Boettiger,<br>　　　　*Defendant* | Civil Action<br>Final Judgment |

This cause coming on to be heard in the presence of Nathaniel W. Franzblau, Esq., attorney for the plaintiff, and Porter & Hobart, Esqs., by Newton H. Porter, Jr., Esq., appearing as the attorney for the defendant; and it appearing that the plaintiff filed a complaint for separate maintenance; and it appearing that the parties hereto have waived the service of process by stipulation filed in this cause; and it further appearing that the plaintiff and defendant were lawfully married on June 14, 1941, at Palo Alto, California, and that the defendant, Russell W. Boettiger, without justifiable cause did separate himself, desert and abandon the plaintiff since about October, 1945; and it further appearing there was one daughter born of the said marriage named Diane, nine years of age; and it further appearing to the court that the parties hereto have entered into an agreement, a duplicate original of which is hereto annexed and the court having considered the same and being satisfied that the said agreement is fair and equitable; and moreover, it appearing that the parties hereto and their respective attorneys have consented to the entry of this order:

It is thereupon on this 8th day of January, 1952, Ordered, Adjudged and Decreed that in October, 1945, the defendant, Russell W. Boettiger, did unjustifiably and without cause separate himself from and desert the plaintiff, Elaine N. Boettiger, and did fail to suitably maintain and provide for the support and maintenance of the plaintiff and their infant daughter Diane; and

It is further Ordered, Adjudged and Decreed that the said agreement hereto annexed be and the same is hereby made a part hereof; and furthermore, that the said agreement be and is hereby approved and that the defendant, Russell W. Boettiger, carry out and abide by the terms thereof.

Shortly thereafter the petitioner's wife and daughter moved to Arizona for about 1 month, and then moved on to California where they have subsequently resided. One of the wife's two sons, by a previous marriage, lived with them for the first year, and the other son lived with them only for the summer months of the first year. The rent on their apartment gradually decreased from a high of $135 per month in 1952 to $80 per month in 1954.

The petitioner's daughter attended public school during the years 1952, 1953, and 1954. During that same period, the child was not ill and required only routine expenditures in connection with her health. These expenditures, totaling $49.55 in 1952, were paid by the petitioner as required by the agreement.

The Superior Court of the State of California in and for the City and County of San Francisco, made and entered its interlocutory judgment of divorce between the petitioner and his wife under the date of July 9, 1954. The agreement which they had consummated in 1952, and referred to previously, was incorporated therein. The only payments to be made under this decree were those provided for in that agreement.

Pursuant to all of the above, the petitioner paid the following sums to his wife:

From January 15, 1952, to and including December 13, 1952, in the aggregate amount of_____ $7, 020. 00
From January 14, 1953, to and including December 13, 1953, in the aggregate amount of_____ $7, 020. 00
From January 16, 1954, to and including June 15, 1954, in the aggregate amount of_____ $4, 294. 38
From July 14, 1954, to and including December 14, 1954, in the aggregate amount of_____ $4, 294. 38

The petitioner deducted the above amounts from his adjusted gross income on his individual income tax returns for the years in which payment was made, i. e., 1952, 1953, and 1954, respectively.

The petitioner's wife had no employment income in the year 1952, and earned $1,251.03 and $1,543.75 in 1953 and 1954, respectively.

The petitioner's daughter had not attained the age of 19 years at the close of any of the calendar years 1952, 1953, and 1954, did not have gross income over $600 per year, and was a citizen of the United States.

OPINION.

1. The petitioner contends that the payments he made to his wife during 1952, 1953, and from January 16 to June 15, 1954, are deduc-

tible from his gross income under section 23 (u) of the Internal Revenue Code of 1939 [1] and section 215 (a) of the Internal Revenue Code of 1954,[2] because they are includible in his wife's gross income pursuant to section 22 (k) of the 1939 Code [3] and 71 (a) (1) of the 1954 Code.[4]

Section 22 (k) provides that only periodic payments made to a wife who is divorced or "legally separated" from her husband under a decree of divorce or separate maintenance are includible in the gross income of the wife. This section, added to the Code by the Revenue Act of 1942, was soon thereafter interpreted in *Frank J. Kalchthaler*, 7 T. C. 625 (1946), where, at page 628, we stated:

> The construction which must be placed upon section 22 (k) * * * is that it relates to periodic payments made under a decree of separate maintenance to a wife who is legally separated or divorced from her husband, but that it does *not* apply to a decree of separate maintenance made to a wife, who is not legally separated or divorced.
>
> An action for separate maintenance is not an action for legal separation, generally speaking. The object of the former is to compel a husband to provide support, and the decree of separate maintenance and/or support does not expressly authorize the wife to live apart from her husband. On the other hand, a decree of separation from bed and board authorizes a wife to live apart from her husband. * * *

Assuming, but without deciding, that the payments here are periodic, the petitioner's contention must still fail for want of a "legal separation" between the petitioner and his wife, as required by statute.

Elaine's action, according to the petitioner's own brief, was instituted under title 2A of the New Jersey Statutes, effective January 1, 1952, providing:

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * *

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[2] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[3] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and * * * shall not be includible in the gross income of such husband. * * *

[4] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

2A:34-24.  Abandonment of wife; support of wife and children; debts during maintenance

If a husband, without justifiable cause, shall abandon his wife or separate himself from her and refuse or neglect to maintain and provide for her, the court may order suitable support and maintenance to be paid and provided by the husband for the wife and her children, or any of them, by their marriage, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper.  The court may compel the defendant to give reasonable security for such maintenance and allowance and may, from time to time, make further orders touching the same as shall be just and equitable and enforce such judgment and orders in the manner provided in section 2A:34-23 of this title.  During the time such maintenance shall be allowed, the husband shall not be chargeable with the debts of the wife.

The Supreme Court of New Jersey, in *Lavino* v. *Lavino*, 23 N. J. 635, 130 A. 2d 369, 371 (1957), stated that "the primary object of separate maintenance is to enforce the husband's duty of support." This duty existed at common law.  If breached, the wife's only remedy was to pledge her husband's credit, and thereafter the unpaid creditor could sue the husband to collect on the debt.  Thus, the wife could not sue her husband directly, but could only force suit upon him through a third-party creditor for specific items.  The New Jersey statute furnished the wife with an additional, direct remedy, in keeping with her common-law right, but for general relief.  *George* v. *George*, 20 N. J. Misc. 41, 23 A. 2d 599, 601 (1942).  As stated in *Pierson* v. *Pierson*, 189 Atl. 391, 393 (N. J. Ch., 1937), "The sole purpose of the [separate maintenance] suit is to liquidate into a money decree the husband's common-law obligation of support."  The court in the *Pierson* case also stated that the separate maintenance statute did not have as its purpose to sever or alter the bond of matrimony, but merely to make more readily enforcible the wife's right to support.  In view of the above, the issuance of such a decree cannot reasonably be construed to constitute a "legal separation."

To contradict the clear meaning of the above-cited cases, the petitioner cites *Isserman* v. *Isserman*, 11 N. J. 106, 93 A. 2d 571 (1952), as support for the proposition that a "separate maintenance" suit in New Jersey under section 2A:34-24 *supra*, effectively decrees a legal separation.

We do not agree that the *Isserman* case supports such proposition. There a wife, separated in fact and beneficiary of a New Jersey decree for separate maintenance, actively but unsuccessfully contested her husband's foreign divorce proceeding, the decree in which "[settled] all the rights of property of the parties and the right of the * * * [wife] to alimony, separate support and maintenance, past, present and future."  In ruling on the former wife's application that her ex-husband be held in contempt for failing to make payments under the New Jersey decree, the New Jersey Supreme Court contrasted sup-

port and maintenance and alimony payments in the following language, at page 575:

There is a distinction between support and maintenance or alimony *pendente lite*, and alimony allowed in a final judgment for divorce *a vinculo*. The former is the duty of support owed by the husband to the wife during such time as they were legally separated during the existence of the marital relationship. Alimony in its technical sense in this State is purely statutory and is an expression of the continuing duty of support which a husband owes his wife, * * *

It is clear that the phrase "during such time as they were legally separated" in the above quotation is pure dictum in that case. The contrast made by the New Jersey Supreme Court is complete without it for the passage would then read "support and maintenance or alimony *pendente lite* * * * is the duty of support owed by the husband to the wife * * * during the existence of the marital relationship."

In *John B. Keleher*, 25 T. C. 1154, 1158 (1956), where the question of the meaning of the statutory term "legal separation" was also raised, we stated:

In order that periodic payments of separate maintenance be includible in the income of a wife and deductible from that of the husband, they must be imposed upon the husband by virtue of a decree of separate maintenance which has the legal effect of *sanctioning or legitimizing* the living apart of a husband and wife. [Emphasis supplied.] *Frank J. Kalchthaler*, 7 T. C. 625 [1946]; *Charles L. Brown*, 7 T. C. 715 [1946]. * * *

The term "sanctioning or legitimizing" indicates that a court decree, in order to be construed as one that effectuates a "legal separation," must expressly and affirmatively provide that the parties live apart in the future, and thereby alter the original and normal marital relationship.

In *Dean V. Fuqua*, 27 T. C. 909 (1957), we found the required "legal separation," even though a mere de facto separation existed, on the reasoning that the decree indicated findings that could have justified an absolute or limited divorce. We have again carefully considered this concept and now decide that the mere fact that a separate maintenance decree recognizes an existing de facto separation is in no way determinative of whether there is the actual "legal separation" required by section 22 (k). The added factor that a decree indicates facts that could support a decree for absolute or limited divorce is meaningless, when no such decree was in fact made or entered. *Dean V. Fuqua, supra*, is accordingly overruled.

We would be legislating, and not interpreting, if we were to reduce the statutory requirement for "legal separation" here to a mere de facto separation in those cases where the facts would have justified decreed legal separation. We would also be speculating as to what a State court might, or could have done. It is noted in passing that Congress has changed the law by the Internal Revenue Code of 1954

to allow for the deduction of separate maintenance payments pursuant to a court decree entered after March 1, 1954. Sec. 71 (a) (3), I. R. C. 1954.[5]

Thus, since the above-cited New Jersey cases clearly indicate that the separate maintenance suit between the petitioner and his wife only effectuated the wife's right to support, and does not affect their marital status in any other way, there was no "legal separation" as required by section 22 (k). Consequently, the 1952 and 1953 payments are not deductible to the petitioner under section 23 (u). The rationale applicable to the above 1939 Code provisions also applies to their counterparts, sections 71 (a) (1) and 215, in the 1954 Code, because the language of both is substantially the same. Therefore, the payments from January 16 to June 15, 1954, are also not deductible by the petitioner, since the New Jersey decree was not entered after March 1, 1954. Cf. *Charles M. Hendricks*, 30 T. C. 1303 (1958).

2. The respondent has conceded as deductible all payments made pursuant to the separation agreement after it was incorporated into a California interlocutory divorce decree on July 9, 1954, save only the amount payable for the support of petitioner's daughter. This position is based on section 71 (a) (3), *supra*, which was introduced by the Internal Revenue Code of 1954. Section 71 (a) (3) requires the wife to include in her gross income payments made for her support pursuant to any court decree for support and maintenance entered after March 1, 1954. Since the California decree qualifies, section 215 then allows the deduction to be taken by the petitioner.

However, the respondent still contends that the agreement fixes an amount of $200 per month as payable for the support of the petitioner's daughter. Such payments are not deductible by the petitioner under section 71 (b) of the 1954 Code.[6] To determine the amount in question the agreement as a whole must be construed and any one section of the agreement is not in and of itself controlling.

---

[5] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

   (a) GENERAL RULE.—

      *        *        *        *        *        *        *

    (3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

[6] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

   (b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

Although the agreement mentions that the initial payments were "as and for the support and maintenance of the wife," this language is qualified and modified by a subsequent provision to the effect that "the wife agrees *out of said payments* to support and maintain their daughter Diane, except for necessary and reasonable medical, dental or hospital expense." (Emphasis supplied.) At the end of 5 years, the initial minimum payments of $585 per month were to stop, and the petitioner was to give the wife only $200 per month to be used for the sole support of their daughter, until she should reach 21, marry, or die. In addition, an acceleration clause provided that if the wife should remarry, the initial payments would terminate and the $200 payments for support of the daughter commence. Also, it is noted that a letter to the petitioner from his wife expressly indicating such intent was introduced into evidence by the petitioner.

Considering all of the above, we conclude that the petitioner and his wife intended, and that $200 per month of the initial payments in fact was, for the support of their daughter. It follows that the petitioner may not deduct that amount from his gross income as alimony.

3. The petitioner has alternatively alleged that he has furnished more than one-half of his daughter's support for the years 1952, 1953, and 1954, and thus should be allowed a $600 exemption for those years, in accordance with section 25 (b) of the 1939 Code and sections 151 and 152 of the 1954 Code.[7] We can only agree with this allegation in part.

---

[7] SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME.

    (b) CREDITS FOR BOTH NORMAL TAX AND SURTAX.—

        (1) CREDITS.—There shall be allowed for the purposes of both the normal tax and the surtax, the following credits against net income:

            (D) An exemption of $600 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600 * * *

        (3) DEFINITION OF DEPENDENT.—As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer:

            (A) a son or daughter of the taxpayer * * *

* * * The term "dependent" does not include any individual who is a citizen or subject of a foreign country unless such individual is a resident of the United States or of a country contiguous to the United States. A payment to a wife which is includible under section 22 (k) or section 171 in the gross income of such wife shall not be considered a payment by her husband for the support of any dependent.

SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

    (a) ALLOWANCE OF DEDUCTIONS.—In the case of an individual, the exemptions provided by this setion shall be allowed as deductions in computing taxable income.

    (e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

        (1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—

            (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or

            (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.

Footnote continued on following page.

Since we have determined that the petitioner cannot deduct the payments to his wife in 1952 and 1953, because there was no legal separation, these payments must be treated as his funds, and their use to support his daughter is directly traceable to him. Moreover, part of the $7,000 lump-sum payment to the petitioner's wife was expressly to be used for the establishment of a home for the wife and daughter outside of the State of New Jersey. Thus, some segment of this amount was expressed to be for the petitioner's daughter. The only other funds that were available during 1952 and 1953 for the support of the petitioner's daughter consisted of Elaine's own earnings in 1953 of $1,251.03. Although the petitioner has not specifically proved the total cost of his daughter's support, and the precise amount he contributed, the record shows that she attended public schools; that her mode of living was modest; and we are convinced that he did furnish more than one-half of her support during 1952 and 1953. Cf. *E. R. Cobb, Sr.*, 28 T. C. 595 (1957).

However, it is not reasonable to reach the above conclusion with respect to 1954. After July 9, 1954, all payments made by the petitioner to his wife, except $200 per month, are considered her own and separate funds. Thus, since she received $4,294.38 in the last half of 1954, and $1,200 is not includible in her gross income, the net amount that she obtained for herself was $3,094.38. Add the $1,543.75 of her total earnings in 1954, and we find that she had total funds of $4,638.13 available for the support of herself and the daughter. Considering this factor, the petitioner has not sustained his burden of proving that he supplied more than one-half of his daughter's support and maintenance. Consequently, we hold that the petitioner may take an exemption for his daughter for the years 1952 and 1953, but not for 1954.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, dissents.

---

Footnote 7 continued from preceding page.

(3) CHILD DEFINED.—For purposes of paragraph (1) (B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer.

SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer) :

(1) A son or daughter of the taxpayer * * *

\*        \*        \*        \*        \*        \*        \*

(b) RULES RELATING TO GENERAL DEFINITION.—For purposes of this section—

\*        \*        \*        \*        \*        \*        \*

(4) A payment to a wife which is includible in the gross income of the wife under section 71 or 682 shall not be treated as a payment by her husband for the support of any dependent.