WILLIAM M. BOYER, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7420–79.     Filed July 26, 1982.

---

William M. Boyer, pro se.
*Charles O. Cobb,* for the respondent.

OPINION

WILBUR, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1976 in the amount of $48,997.19. The sole issue presented for our decision is petitioner's marital status for tax purposes for 1976, the determination of which has several significant collateral effects.

All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. A brief summary of the salient facts follows.

William M. Boyer (hereinafter referred to as William or petitioner) filed a Federal income tax return for the taxable year 1976 with the Office of the Internal Revenue Service at Portsmouth, N.H. At the time of the commencement of this suit, petitioner resided in Toronto, Canada.

On April 13, 1976, William filed a complaint for divorce against his wife, Marjorie J. Boyer (Marjorie), with the Probate Court for Essex County, Mass. The complaint cited as grounds an irretrievable breakdown of the marriage, a breakdown which had continued since approximately March 11, 1976, when the couple last lived together.

On April 23, 1976, Marjorie filed a complaint for separate support against William with the Probate Court for Essex County, Mass. The complaint alleged that the parties were living apart because on or about March 11, 1976, William had been guilty of cruel and abusive treatment towards Marjorie. As relief, Marjorie requested that the court (1) prohibit William from imposing any restraint on her personal liberty, (2) order a suitable amount for her support, and (3) establish that she had justifiable cause for living apart from her husband.

On May 3, 1976, Marjorie as plaintiff moved the Probate

Court to enter an order for her temporary support. On May 6, 1976, Marjorie also asked for a temporary restraining order prohibiting William from interfering with her personal liberty and from coming on to the premises located at 14 Willowby Way, Lynnfield, Mass. (the marital home).

On May 6, 1976, the Probate Court entered an order requiring William to make weekly support payments to Marjorie, as well as to bear the expense of certain other items (including the costs of the marital home). William was further "prohibited from imposing any restraint on the personal liberty of plaintiff" and was "restrained from re-entering home after taking his personal belongings." This order was issued "Pending a hearing on the merits or until further order of the Court."[1]

On July 18, 1978, Marjorie as plaintiff in a separate action against William was granted a judgment of divorce nisi. The judgment required William to pay Marjorie alimony, to convey the marital home to her, and to return to her certain items of personal property which he had removed from the home. The decree further stated that:

> The issue of support arrears arising from temporary orders made by this Court pursuant to complaint No. D–730 [the Complaint for Separate Support referred to previously] brought by the Plaintiff are reserved by this judgment and shall be subject to determination by this Court after hearing, said hearing to take place within a reasonable time.

By its terms, after the expiration of 6 months from the entry of this judgment, it was to become final unless otherwise ordered by the court. On the same day, William's original complaint for divorce was dismissed.

On January 8, 1979, Marjorie moved the Probate Court to prevent the judgment of divorce nisi from becoming final and absolute. Marjorie's reasons for making this request were not revealed. The motion was allowed and the judgment thereby stayed.

---

[1]Petitioner stated in his opening statement and on brief that the judge who issued the order told him in open court that he was forbidden to telephone or write to his wife or have any direct communication with her. Respondent correctly objects that petitioner, who appeared pro se, has not made an adequate record to permit these additional facts to be found. They would in any event simply make crystal clear what is clear enough—the court found that petitioner's wife was justified in living separately and ordered petitioner to fully and completely live by that separation.

William selected and utilized the filing status of "single" when preparing his 1976 Federal income tax return. In his statutory notice of deficiency, respondent determined that William was still married at the close of 1976 and therefore recomputed petitioner's tax using the married filing separate tax rates instead of the tax rates applicable to single individuals. Secs. 1(c) and 1(d).[2] As a further consequence of this change in filing status, respondent determined that the general tax credit should be limited to no more than 2 percent of the first $4,500 of taxable income and further that William was not entitled to the advantages of the maximum tax (his tax instead was recomputed using the alternative tax).[3] Most of the deficiency (of $48,997.19) arises from the unavailability of the maximum tax under respondent's theory.

Rules for the determination of marital status are set forth in section 143, which in relevant part provides:

SEC. 143. DETERMINATION OF MARITAL STATUS.

(a) GENERAL RULE.—For purposes of this part—

(1) The determination of whether an individual is married shall be made as of the close of his taxable year; except that if his spouse dies during his taxable year such determination shall be made as of the time of such death; and

(2) An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married.

Thus we must decide whether on December 31, 1976, William was legally separated from Marjorie under a decree of separate maintenance since no decree of divorce had been entered as of that date.

---

[2]William's petition did not contest the other adjustments proposed by the respondent in his deficiency notice.

All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years here in issue.

[3]For the taxable year 1976, a general tax credit was allowed in an amount equal to the greater of (1) 2 percent of taxable income (taxable income being limited to no more than $9,000) or (2) $35 multiplied by the number of exemptions for which the taxpayer is entitled to a deduction under sec. 151(a) and (b). Sec. 42(a). A special rule was provided with respect to married individuals who file a separate return. In such a case, the credit is to be computed on no more than $4,500 of taxable income, so that the maximum credit under this section for such a person is $90. Sec. 42(c)(1). The determination of marital status for this purpose is to be made under sec. 143. Sec. 42(c)(3).

The 50-percent maximum tax rate on earned income applies to married individuals only when the individual and his spouse make a single return jointly for the taxable year. Sec. 1348(c). For this purpose, an individual's marital status is to be determined under sec. 143 and the regulations thereunder. Sec. 1.1348–1, Income Tax Regs.

Petitioner argues that the Probate Court's order determining that his wife was justified in living apart and restraining him from approaching his wife or the marital residence modified the marital status or created a new status under Massachusetts law. Respondent counters that the court order was a temporary order that did not alter the legal relations between William and Marjorie or the status of the marriage under Massachusetts law. We agree with petitioner and hold that he was legally separated within the contemplation of the statute and is therefore entitled to file his 1976 Federal income tax return as a single individual.

The question of whether a taxpayer is married for purposes of the tax laws is to be determined in accordance with the laws of the State of the marital domicile of the parties. *Dunn v. Commissioner*, 70 T.C. 361, 366 (1978), affd. without published opinion 601 F.2d 599 (3d Cir. 1979); *Eccles v. Commissioner*, 19 T.C. 1049, 1051 (1953); affd. per curiam 208 F.2d 796 (4th Cir. 1953); cf. *Deyoe v. Commissioner*, 66 T.C. 904, 913 (1976). We therefore examine Massachusetts law in order to properly categorize the type of decree issued herein as well as to determine its effect.

A survey of the Massachusetts statutes relating to domestic relations reveals two distinct patterns for dealing with the relationship between the parties following the breakdown of a marriage. The laws governing divorce are contained in Massachusetts Annotated Laws chapter 208 (Michie/Law. Co-op. (1981)). In the present case, William filed his complaint in 1976 under section 1 of chapter 208 upon the grounds of an irretrievable breakdown of the marriage. This complaint was later dismissed. Marjorie's complaint for divorce, also filed under this section at an unspecified time, cited cruel and abusive treatment. It was this complaint which resulted in the issuance of the judgment of divorce nisi, which was subsequently stayed. See also Mass. Ann. Laws ch. 208, secs. 1A and 1B. All judgments of divorce in Massachusetts are to be entered in the first instance as judgments nisi, and shall become absolute after the expiration of 6 months from the date entered, unless the court, for sufficient cause upon the application of any party to the action, orders otherwise within the 6-month period, as occurred here. Mass. Ann. Laws ch. 208, sec. 21.

Chapter 208 also governs the relationship of the parties to a divorce proceeding during the pendency of the action. For example, under section 17, the court may require either party to provide the other with the funds necessary to maintain or defend the divorce action, and to pay the other alimony during the pendency. Section 18 empowers the Probate Court in which an action for divorce is pending, upon petition of the wife, to prohibit the husband from imposing any restraint upon her personal liberty during the pendency of the action, and under section 34B, the court can order him to vacate the marital home. Although these remedies were available to Marjorie as the defendant in William's divorce complaint, her motions were not made under these provisions but rather under the alternative complaint procedure relating to separations detailed below.

Chapter 209 is entitled "Husband and Wife." There is a subheading beginning with section 30 entitled "Married Women [Persons] Abandoned by their Husbands [Spouses], Etc." Section 32 contained therein provided in relevant portion during 1976:

> If a husband fails, without justifiable cause, to provide suitable support for his wife, or deserts her, or if the wife has justifiable cause for living apart from her husband, or if the husband is deserted by his wife or has justifiable cause for living apart from his wife, whether or not he or she is actually living apart, the probate court may, upon his or her complaint, or if he or she is incompetent due to mental illness or mental retardation, upon complaint of the guardian or next friend, prohibit the husband or wife from imposing any restraint on the personal liberty of the other during such time as the court by its order may direct or until further order of the court thereon and upon the complaint of any such party or guardian of a minor made in accordance with the Massachusetts Rules of Civil Procedure the court may make further orders relative to the support of the wife and the care, custody and maintenance of their minor children, may determine with which of their parents the children or any of them shall remain and may, from time to time, upon similar complaint revise and alter such judgment or make a new order or judgment as the circumstances of the parents or the benefit of the children may require. [1975 Mass. Acts ch. 400, sec. 44.]

It has been held many times that where the separate maintenance suit "only effectuated the wife's right to support, and *does not affect their marital status* in any other way, there was no 'legal separation.'" *Boettiger v. Commissioner*, 31 T.C. 477, 484 (1958) (emphasis added); *Dunn v. Commissioner*, 70 T.C. 361, 368 (1978). We must therefore determine whether,

under applicable State law, the order holding that petitioner's wife was living apart for justifiable cause and forbidding petitioner access to the marital residence significantly affected the marital status or only concerned the wife's right to support.

As noted earlier, the action before us does not involve a request for an order pendente lite ancillary to a divorce proceeding, but was brought under provisions of Massachusetts law (Mass. Ann. Laws ch. 209, sec. 32), providing a distinct and separate procedure for determining that a spouse has justifiably separated and for specifying the conditions under which the separation is to continue. In *DeMarzo v. Vena,* 330 Mass. 118, 111 N.E.2d 797 (1953), the Supreme Judicial Court of Massachusetts carefully considered the nature of a decree issued under Massachusetts Annotated Laws chapter 209, section 32 or 36:

> We believe that although, after a decree under §32 or §36, the parties still remain husband and wife, the incidents which constitute the marriage are so changed that the relationship which remains is substantially different from that ordinarily indicated by the term marriage. The husband's duty to support the wife is either terminated altogether or limited by the terms of such a decree. It was recently said in Wiley v. Wiley, 328 Mass. 348, at page 349, 103 N.E.2d 699, at page 700, a case arising out of §32, "But the scope of the statute and the prayers of the petition go beyond the matter of a decree in personam for money payments. They comprehend a modification of the incidents of the status of marriage." * * * [111 N.E.2d at 800.]

The court, considering Massachusetts Annotated Laws sections 32 and 36 (comparable provisions of chapter 209) in tandem, concluded that the "cases seem to treat a decree under §32 and §36 as modifying the marital status or creating a new status and therefore appearing to be a decree in rem." 111 N.E.2d at 800. In quoting favorably from an earlier case (*McIlroy v. McIlroy,* 208 Mass. 458, 464, 94 N.E. 696, 698 (1911)), the *DeMarzo* court further explained these sections:

> "The statute expressly provides that the court after having made its order, 'may from time to time' upon application of either party 'revise or alter such order or make a new order or decree' as circumstances may require. The manifest intention of the Legislature was that the order should not be vague and indefinite in its duration, liable to be abrogated or annulled by the mere act of the parties, and to be upheld or overthrown as parol evidence might establish or fail to establish conduct of the parties more or less inconsistent with the grounds upon which it was based, but that the order once made should continue in force until revised or altered by the court itself * * * ." A

fortiori a decree under §36 stands until revoked, no provision being made in §36 for any revision or alteration of it. [111 N.E.2d at 799.]

It is clear then that an order issued pursuant to Massachusetts Annotated Laws section 32 fundamentally changes the status of a marriage until "revised or altered by the court itself." *DeMarzo v. Vena*, 111 N.E.2d at 799. Indeed, "a probate decree that a husband has been deserted by his wife or that he is living apart from her for justifiable cause is a legal adjudication of such fact," and, accordingly, the husband may "convey his real estate as though sole and the wife is barred from waiving the provisions of his will." 2 Mass. Practice, Lombard, Family Law, part 3, ch. 55, sec. 1443, p. 582 (1967). Cf. *Jordan v. Silva*, 330 Mass. 165, 112 N.E.2d 258 (1953). Additionally, a probate decree under Massachusetts Laws Annotated chapter 209, section 32 or 36 so affects "the marriage status so as to afford the husband a defense against claims of the third person for necessaries thereafter furnished to the wife and for the expenses of her funeral." *DeMarzo v. Vena*, 111 N.E.2d at 797 (1953).

Respondent refers us to *Slavinsky v. Slavinsky*, 287 Mass. 28, 190 N.E. 826 (1934), for "an extended discussion" of contrary authority. The extended discussion in *Slavinsky* features a long quote from *Barney v. Tourtellotte*, 138 Mass. 106 (1884), stating that the marital status of the parties is only marginally affected by an order under section 32. The difficulty with relying on the *Slavinsky* and *Barney* cases is that the Supreme Court of Massachusetts, in the much later case of *DeMarzo v. Vena, supra*, specifically noted that the *Barney* case was "hardly consistent" with the prior precedents, and that "it is difficult if at all possible to reconcile what was said in the *Barney* case as to status with what was said" in the other Massachusetts precedents treating "a decree under section 32 or 36 as modifying the marital status or creating a new status." Accordingly, the court stated that "in so far as anything is said in [*Barney v. Tourtellotte*] which seems inconsistent with the position here taken we do not feel compelled to follow it." 330 Mass. 118, 111 N.E.2d 797, 800 (1953).[4]

---

[4]As to *DeMarzo v. Vena*, it has been stated:

Respondent also cites other Massachusetts cases that recognize that a wife living apart under a Massachusetts Annotated Laws section 32 order must accept a good-faith offer of reconciliation, and that it would be the duty of the court in those circumstances to revise or revoke its decree. But this is simply the hornbook law governing virtually all instances where a married couple is legally separated under a decree of separate maintenance. That a legal separation will end when the causes justifying the separation are removed does not mean there is no separation—it simply means that at some point the separation may be terminated by a reconciliation.[5]

The statute before us, as interpreted by the highest court of Massachusetts, is therefore fundamentally different from the statute involved in *Dunn v. Commissioner*, 70 T.C. 361 (1978), *Capodanno v. Commissioner*, 69 T.C. 638, 640 (1978), affd. 602 F.2d 64 (3d Cir. 1979), and *Boettiger v. Commissioner*, 31 T.C. 477 (1958), on which respondent relies. The Wisconsin statute involved in *Dunn* empowered the court to issue pendente lite orders "during the pendency of an action"—and the only action involved was a petition for divorce. After reviewing Wisconsin law, we held that "A temporary order for support during pendency of a divorce proceeding is more in the nature of an order for support and like such an order for support * * * 'the marital status is unaffected.'" 70 T.C. at 368. (Emphasis added.)

*Boettiger* and *Capodanno* both involved a New Jersey statute authorizing a judgment of separate maintenance. Both

---

"This opinion seems to supersede all prior opinions or dicta and to establish the law that a desertion or separation decree while in force under section 32, 35 or 36 is a decree 'in rem' and that either spouse can deal with his or her own property without reference to the other spouse while the decree is in force. * * * [Thirteenth Report of the Judicial Counsel of Massachusetts (to the Governor), 40 Mass. Law Q. 1, 34 (1955).]"

[5]Respondent contends that since the marriage continues, and is not suspended, that there cannot be a legal separation. This seems to confuse a legal separation pursuant to a decree of separate maintenance with a limited divorce or a divorce a mensa et thoro. A divorce a mensa et thoro, sometimes referred to as a judicial separation, is often said to suspend the marriage. However, sec. 143(d) provides that an individual will be considered as not married if he is "legally separated from his spouse under a decree of divorce *or* of separate maintenance." (Emphasis added.) We have held that a divorce a mensa et thoro is a divorce decree within the purview of this language. *Gorsaud v. Commissioner*, 28 T.C. 1086, 1089 (1957). If we limited the term "legal separation" to a divorce a mensa et thoro, we would be eliminating the term "legally separated under a decree of * * * separate maintenance" from the statute. This we refuse to do. See generally H. Clark, Law of Domestic Relations sec. 6.4 (West 1968).

cases extensively analyze the New Jersey law, with *Boettiger* (a Court-reviewed opinion) stating:

since the above-cited New Jersey cases clearly indicate that the separate maintenance suit between the petitioner and his wife only effectuated the wife's right to support, and *does not affect their marital status* in any other way, there was no "legal separation" as required by section 22(k). * * * [31 T.C. at 484. Emphasis added.]

These statements are in sharp contrast to an order under the statute before us which modifies the marital status or creates a new status, so changing the incidents of marriage "that the relationship which remains is substantially different from that ordinarily indicated by the term marriage." *DeMarzo v. Vena*, 330 Mass. 118, 111 N.E.2d 797, 800 (1953). Accordingly, we find the cases respondent relies on are clearly distinguishable and decide this case for petitioner.

*Decision will be entered under Rule 155.*