John J. Tyne, Jr. v. Commissioner.
Tyne v. Commissioner
Docket Nos. 233-62, 2788-62.
United States Tax Court
T.C. Memo 1966-214; 1966 Tax Ct. Memo LEXIS 68; 25 T.C.M. (CCH) 1112; T.C.M. (RIA) 66214; September 29, 1966
John J. Tyne, Jr., pro se, 801 Lyman Ave., Oak Park, Ill. James E. Caldwell for the respondent. WITHEY
Memorandum Findings of Fact and *69 Opinion WITHEY, Judge: The respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows: Docket No.
Year
Deficiency
233-62
1957
$ 545.88
1958
1,236.02
2788-62
1960
473.41
The cases have been consolidated and will be decided together. The issues for determination are: 1. Whether petitioner's automobile and truck expenses for the years 1957, 1958, and 1960 constituted ordinary and necessary expenses incurred in carrying on his trade or business. 2. Whether petitioner's education expenses for 1958 and 1960 constituted ordinary and necessary expenses incurred in carrying on his trade or business. 3. Whether petitioner provided over half the support for his father in 1957, 1958, and 1960; for his mother in 1957 and 1958; and for his sister in 1958. 4. Whether petitioner is entitled to a deduction for charitable contributions allegedly made in 1960. 5. Whether the legal expenses paid by petitioner in 1958 and 1960 were incurred in carrying on his trade or business. Additional issues raised by the pleadings have been disposed of by agreement of the parties. General Findings of Fact Some of the *70 facts have been stipulated and are found accordingly. Petitioner, John J. Tyne, Jr., resided in Oak Park, Illinois, during the taxable years in question. He filed his individual income tax returns for the years 1957, 1958, and 1960 with the district director at Chicago, Illinois. On his returns for 1957 and 1958 petitioner listed his occupation as "operating engineer." On his 1960 return his occupation was listed as "engineer." Issue 1. Travel Expense Deductions Findings of Fact During the taxable years involved, 1957, 1958, and 1960, petitioner was employed by several companies involved in heavy construction and roadbuilding work. During those years approximately 54 percent of petitioner's total gross income resulted from his employment with Kenny Construction Company of Markham, Illinois (hereinafter Kenny), and approximately 40 percent of his total gross income received during the same period resulted from his employment with C.K.G. Associates of Western Springs, Illinois (hereinafter C.K.G.). In all years in question petitioner was an apprentice operating engineer (commonly referred to as an oiler) in the International Union of Operating Engineers and received wages *71 commensurate with the job of machine oiler. Although C.K.G. and Kenny employed petitioner principally as a machine oiler to lubricate, maintain, and clean construction equipment, he occasionally worked as a machine operator for C.K.G. and as a pump operator for Kenny. In the latter capacity petitioner was required to maintain diesel-driven water pumps which involved bleeding fuel injectors, replacing fuel and oil filters and changing spark plugs. Kenny had a company policy of providing its machine oilers with the necessary tools of trade, typically a crescent wrench, a grease gun, and rags. Petitioner, however, carried approximately 200 pounds of his trade tools to and from work in his car or truck daily, making use of them as his work required. He never left his tools at job sites overnight for fear the tools might be stolen. Although public transportation was available to petitioner for commuting to some of his job sites, he always drove to work in his car or truck. Generally he was required to travel from place to place once he arrived at a particular construction site. His on-the-job travel requirements varied from relatively short distances to distances in excess of 5 miles. *72 Neither Kenny nor C.K.G. provided petitioner with company transportation for his on-the-job travel requirements. On his income tax return for 1957, petitioner deducted automobile expenses in the amount of $1,328.04. In 1958, he deducted automobile and truck expenses of $1,377.61, insurance expenses on the truck of $133.25, and depreciation on the truck of $370.80, for a total of $1,881.66. In 1960, he deducted automobile and truck expenses of $569.63 as well as depreciation on the truck of $370.80, for a total of $940.43. Opinion On his income tax returns for the taxable years in question petitioner claimed as a business deduction 100 percent of his automobile and truck expenses, including depreciation on his truck in 1958 and 1960. The entire claimed deduction was disallowed by respondent. In order to substantiate his deductions, petitioner bears the burden of proving that the expenses claimed were ordinary and necessary expenses incurred in his trade or business pursuant to section 162(a), Internal Revenue Code of 1954. [1]
The rule is well established *73 that commuting expenses incurred by an employee in traveling to and from work are nondeductible "personal" expenses under section 262, William L. Heuer, 32 T.C. 947, 953 (1959), affd. per curiam 283 F. 2d 865 (C.A. 5, 1960), and such commuting expenses are not transformed into allowable business deductions merely because an employee carries the tools of his trade with him on such trips. Lawrence D. Sullivan, 45 T.C. 217, 220 (1965), on appeal (C.A. 2, April 6, 1966). It is equally well established that where on-the-job travel is required in the ordinary course of employment and where the employer fails to provide the employee with the necessary means of transportation, or to compensate him therefor, the cost of such transportation, including depreciation of the employee's vehicle, is a deductible expense under section 162(a). William L. Heuer, supra. In view of the foregoing cases, we sustain respondent's disallowance, as a business deduction, of petitioner's travel expenses incurred in driving to and from work in his car or truck. However, petitioner is entitled to deduct as a business expense his unreimbursed cost of on-the-job *74 travel required by the nature of his employment. Petitioner, representing himself at trial, failed to introduce evidence from which we might accurately determine what proportion of his car and truck expenses, incurred in the taxable years in question, were attributable to his on-the-job travel requirements. Nonetheless we are satisfied from the record that he is entitled to some deduction, although we must bear heavily on petitioner "whose inexactitude is of his own making." Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930). In exercising our best judgment we have determined that petitioner is entitled to the following travel expense deductions for the 3 years in question: 1957
Auto expenses
$265.61
1958
Auto and truck expenses
$275.52
Truck insurance
26.66
Depreciation on truck
74.16
376.34
1960
Auto and truck expenses
113.92
Depreciation on truck
74.16
188.08
Issue 2. Education Expenses Findings of Fact During the taxable years 1958 and 1960 petitioner claimed education expense deductions of $643.14 and $251.25, respectively. Respondent disallowed the entire claimed deduction for both years. In 1958, petitioner was *75 employed by C.K.G. and Kenny. In 1960, petitioner was employed solely by Kenny. As stated in Issue 1, supra, although petitioner was employed during those years principally as a machine oiler, the employment records of Kenny show that he also worked as a pump operator for an indeterminate period of time. In addition to the above jobs, petitioner worked as an equipment operator on construction sites as well as an assistant equipment operator setting grade stakes. Opinion Petitioner's tax returns for the years in question failed to disclose the nature of the educational courses taken by him. His testimony, though meager on this point, does disclose that he took geology, surveying, and mathematics at the various institutions of learning he attended in 1958 and 1960. Section 162(a) of the 1954 Code and section 1.162-5, Income Tax Regulations, provide generally that a taxpayer may deduct his education expenses provided the courses are taken primarily for (1) maintaining or improving skills required in his employment or (2) meeting the express requirements of his employer. Petitioner contends that the education expenses he incurred in 1958 and 1960 are deductible *76 because the courses were taken for the purpose of improving his trade skills. He testified that a geology course taken at Notre Dame University enabled him to "understand the ground and its movement" which improved his skills as an equipment operator and driller. He further testified that the mathematics and surveying courses improved his skills with regard to reading and setting grade stakes. Although petitioner incurred expenses at five educational institutions in 1958 [2] and one in 1960,[3] his testimony reveals only three courses taken by him - geology, mathematics, and surveying. While the record fails to disclose any other courses taken and the relationship they may have had to petitioner's employment in the years in question, we think the more serious objection to permitting the claimed deductions for his education expenses lies in the fact that during 1958 and 1960 petitioner was employed principally as a machine oiler and not as a machine operator or driller. When asked whether he had taken the courses to improve his performance as a machine oiler, he replied, "I would say it improved, possibly." *77 From the foregoing facts we conclude that although petitioner's education expenses were not significantly related to his principal employment as a machine oiler during 1958 and 1960, they were, at least to some extent, related to his work as a machine operator during those years. We therefore hold that he is entitled to a deduction for education expenses for 1958 in the amount of $128.62 and for 1960 in the amount of $50.26. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930). Issue 3. Dependency Deductions Findings of Fact During the taxable years in question petitioner lived with his father, mother, and sister. In his return for 1957, he claimed a dependency deduction for his father and mother; in 1958, for his father, mother, and sister; and in 1960, for his father only. In 1957, petitioner's adjusted gross income was $5,152.97; in 1958, $8,261.88; and in 1960, $4,295.56. During the years 1957, 1958, and 1960, the gross income of petitioner's father was less than $600. During the same years petitioner provided more than half of the support for his claimed dependents. Opinion In order to take a dependency deduction, section 151(e)(1)(A) [4] requires *78 that the claimed dependent must have had a gross income of less than $600 in the taxable year in question, and section 152(a) [5] requires that the claimed dependent must have received over half his support from the taxpayer in the year in question. Thus, in order to prevail, petitioner must show that for the taxable years involved each dependent claimed had an income of less than $600 and that petitioner provided more than half his support. The only evidence bearing on this issue was supplied by the testimony of petitioner's father at trial. He stated that during the years *79 1957, 1958, and 1960 he had no income and that petitioner provided "most" of the support for him and his wife in 1957; for him his wife, and daughter in 1958; and for him alone in 1960. Respondent offered no evidence to contradict this testimony. Although the burden is upon petitioner to show that in the tax years involved he provided more than half the cost of supporting his claimed dependents, we hold that where, as in the instant case, the uncontradicted testimony of petitioner's witness shows that petitioner provided "most" of such support, he has satisfied the "over half" requirement of section 152(a). Under facts such as these, petitioner is not required to specifically prove the exact amounts and percentages of his support to his claimed dependents. Russell W. Boettiger, 31 T.C. 477, 486 (1958); see also Gordon S. Wayman, 14 T.C. 1267, 1270 (1950). While the record discloses that petitioner's father had no income in 1957, 1958, and 1960, no evidence was introduced to show what amount of gross income, if any, was received by petitioner's mother in 1957 and 1958 and by petitioner's sister in 1958, the years in which they were claimed as petitioner's *80 dependents. Since section 151(e)(1)(A) specifically provides that the allowance of a dependency deduction is conditioned on the gross income of the claimed dependent being less than $600, petitioner has not sustained his burden of proof as regards his mother and sister. Consequently petitioner is not entitled to the claimed dependency deduction for his mother in 1957 and 1958 or for his sister in 1958. Issue 4. Charitable Contributions Findings of Fact In his income tax return for 1960, petitioner deducted $407.55 for contributions allegedly made to the following charities: St. Catherine of Siena Church, Cancer Fund, Young Men's Christian Association, Red Cross, Augustinian Fathers, Community Chest, Heart Fund, Girl Scouts, Mendel Catholic High School, Sisters of St. Dominic Petitioner's return failed to indicate the date or amount of the individual contributions. Respondent, in his notice of deficiency, disallowed the entire charitable deduction on the ground that petitioner had failed to substantiate it. Opinion At trial petitioner presented no documentary evidence to substantiate his claimed charitable deductions. The only evidence in the record bearing on this issue *81 is petitioner's statement that - Most of these contributions were in the form of cash. I got an affidavit from Monsignor Frawley and submitted it to the Internal Revenue. The Monsignor is since deceased so that he cannot testify. I did make the contributions though. * * * Petitioner's testimony regarding his making of cash contributions was uncontradicted. In addition, the claimed contributions were made to many of the same charities that he had contributed to in 1957 and 1958. However, we feel constrained to question the amount of the charitable deduction claimed since it amounted to 9.4 percent of petitioner's adjusted gross income [6] in a year when he supported not only himself but, as we held in Issue 3, supra, his father as well. We think the foregoing facts entitle petitioner to deduct some portion of his alleged charitable contributions for the year 1960 although he has not, in our view, substantiated the amount of any particular contribution. Accordingly we hold that he is entitled to a charitable deduction of $101.88. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930).
Issue 5. Legal *82 Expenses Findings of Fact In his returns for 1958 and 1960, petitioner claimed $782.50 and $184.60, respectively, as legal expense deductions incurred in defending an involuntary bankruptcy proceeding brought against The Tyne Company. Respondent disallowed the claimed deductions in their entirety on the ground that petitioner failed to show he was a member of the partnership when the bankruptcy proceeding was instituted in 1953. The Tyne Company, a limited partnership, was organized in December 1941. Its original general partners were J. J. Tyne, Sr. (petitioner's grandfather), J. J. Tyne, Jr. (petitioner's father), John Caul, and N. A. Hermes. The limited partners designated in the original articles of limited partnership consisted solely of company employees and did not include the name of petitioner. In 1953, when involuntary bankruptcy proceedings were instituted against The Tyne Company, petitioner's father and John Caul were the only survivors of the original general partners. The record contains no documentary evidence showing a change in the membership of the original limited partners of the company from its inception in 1941 to the institution of the bankruptcy proceedings *83 in 1953. Opinion Petitioner contends that when bankruptcy proceedings were instituted against The Tyne Company in 1953, he was a limited partner in that business and, as such, was entitled to deduct legal expenses he incurred in 1958 and 1960 defending the bankruptcy proceeding. If petitioner had been a partner in 1953, it might be that he would be entitled to the claimed legal expense deduction as an ordinary and necessary business expense under section 162(a). At trial, both petitioner and his father testified that when the bankruptcy proceeding was instituted in 1953, petitioner was a limited partner in the company. Petitioner further testified, however, that under a partnership agreement executed subsequent to the original one in 1941, he was made a limited partner of The Tyne Company. It is a well accepted rule of evidence that where a document is in existence and available, its contents must be proved by the production of the document itself. [7] Since petitioner testified that there was a limited partnership agreement in writing which showed him to be a limited partner in 1953, the proof of his business affiliation in that year could not be shown by his testimony or that *84 of his father. Under the Illinois Limited Partnership Act, [8] two or more persons desiring to form a limited partnership must sign and swear to a certificate which states, among other things, the name and place of residence of each member, including a designation of whether the member is a general or limited partner. The Act further provides that a limited partnership is not formed until there has been substantial compliance with this as well as other requirements. The certificate, once signed and sworn to, must be filed for record in the office of the recorder of deeds of the county where the limited partnership's principal office is located. If, in fact, a formal limited partnership agreement had been executed at the time petitioner became a partner in the company, petitioner could have obtained a certified copy of that agreement from the appropriate county recorder of deeds' office. Such a document would have been admissible to prove his affiliation in the company in 1953. [9] Thus, the testimony of petitioner and his father was not competent to prove that he was *85 a limited partner of the company in 1953. In the absence of competent evidence, we hold that petitioner has failed to prove that he was a partner in The Tyne Company in 1953 or at any other time. He was therefore not *86 entitled to deduct as an ordinary and necessary business expense the legal fees he paid on behalf of the company in 1958 and 1960. Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Central YMCA College; De Paul University; University of Idaho; University of Notre Dame., and University of Oklahoma. ↩
3. University of Oklahoma.↩
4. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. * * *
(e) Additional Exemption for Dependents - (1) In General. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600 * * * ↩
5. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *↩
6. Petitioner's adjusted gross income for 1960 was $4,295.56.↩
7. 4 Wigmore on Evidence, §§ 1174, 1192 (3rd ed. 1940). ↩
8. Ill. Ann. Stat., ch. 106 1/2, sec. 45 (Smith-Hurd).↩
9. Federal Rules of Civil Procedure, Rule 44(a) provides, in part, that - An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office. * * * See also 62 Stat. 947 (1948), 28 U.S.C. sec. 1739↩.