Erwin J. Float v. Commissioner.
Float v. Commissioner
Docket No. 167-69.
United States Tax Court
T.C. Memo 1972-104; 1972 Tax Ct. Memo LEXIS 153; 31 T.C.M. (CCH) 415; T.C.M. (RIA) 72104; May 4, 1972, Filed. *153 Petitioner has claimed his entitlement to dependency exemptions for his children for the years 1965 and 1966. Held, Petitioner has not presented evidence sufficient to infer the total support furnished his children from all sources during these years and has not otherwise been convincing that he furnished more than one-half of that total support. Determination of the respondent is sustained. Erwin J. Float, pro se, 76 Phyllis Ave., Buffalo, N. Y. George W. Connelly, Jr., for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: *154 Respondent determined a deficiency in the income taxes of petitioner for the taxable years 1965 and 1966 in the amounts of $788.97 and $660.15, respectively. The sole issue remaining for decision is petitioner's eligibility to claim dependency exemptions for his children during the taxable period - exemptions which his wife has also taken on her returns. Because of the parties' agreement and settlement of the other questions initially involved here, a Rule 50 computation will be required. Findings of Fact Petitioner's legal residence at the time he filed his petition in this case was 76 Phyllis Avenue, Buffalo, N. Y., and he is now residing at 22 Dunlop Avenue in Buffalo. His income tax returns for 1965 and 1966 were filed with the district director of internal revenue in Buffalo. 416 Petitioner and Edith Gilchries (hereafter Edith) were married in Buffalo on June 12, 1945. Five children were born of the marriage: Susan (born August 10, 1946); Gregory (born July 3, 1947); Muriel (born April 8, 1949); Phyllis (born April 3, 1952); and Erwin, Jr. (born November 20, 1954). Petitioner was employed as a printer with Arcata Graphics Company. He earned $8,743.60 in 1965 and $10,996.97 *155 in 1966. This employment was the only source of his earnings. Because of unhappy differences and disputes, petitioner and Edith have been living apart since January 21, 1964. At a support hearing in the Family Court of Erie County, petitioner agreed to remove himself from the family home leaving the exclusive occupancy of such to Edith. This home was jointly owned by petitioner and his wife. In addition, petitioner agreed to pay $50 per week support for the children, pay outstanding bills, and maintain Blue Cross-Blue Shield insurance for the family. Edith was to receive $50 each month from the rent produced by letting part of the family house and was to make payments on the mortgage ($82 per month) and pay utility expenses and taxes on the house. Edith and the children would continue to reside in the family house. The summary of this hearing also showed that Edith was employed and earning a net amount of $55.80 per week, or $2,901.60 based on a 52-week year. An order of support was entered on January 21, 1964, providing that petitioner would pay the $50 per week support for the children and that Edith would pay all home expenses. That original order was amended on April 20, 1965, to *156 formally provide that in addition to support amount of $50 per week, Edith would receive the $50 per month rent and pay home expenses out of this rent money. This amended order reiterated the agreement reached at the support hearing that petitioner was to leave home and that Edith would occupy the home exclusively. For the years in question from January 1, 1965, until January 1, 1967, petitioner's employer, Arcata Graphics Company, paid $377.28 in permiums for Blue Cross-Blue Shield health insurance, a family policy which covered all of petitioner's children, his wife, and himself. This coverage was a fringe benefit of petitioner's employment with Arcata and the coverage did not involve a deduction from his salary. During 1965, Gregory, Muriel, Phyllis, and Erwin, Jr., lived with their mother at 107 Roosevelt Avenue in Buffalo. Petitioner contributed approximately $2,080 toward the children's support in that year as per the order of support. During 1966, Muriel, Phyllis, and Erwin, Jr., lived with their mother at the Roosevelt Avenue address. Petitioner contributed approximately $1,560 in support of these children in 1966 as per the order of support. Both petitioner and Edith *157 claimed personal exemptions for Gregory, Muriel, Phyllis, and Erwin, Jr., in 1965 on their Federal tax returns. In 1966 petitioner and Edith both claimed personal exemptions for Muriel, Phyllis, and Erwin, Jr., on their returns for that year. Opinion Under the provisions of section 151(a)[1] and (e) [2] of the Internal Revenue Code of 1954, a taxpayer is allowed a dependency exemption for every child who qualifies as a dependent under the terms of section 152. For the taxable years involved herein (i. e., taxable years beginning before January 1, 1967) the exemption was allowed to the parent who contributed more than one-half of the support of the child during the taxable year. [3]
The question with respect to which *158 parent is entitled to the dependency exemption is one of fact, but a taxpayer is not precluded from being entitled to the exemption simply because he or she is not able to prove conclusively the total cost of the child's support. E. R. Cobb, Sr., 28 T.C. 595 (1957); James E. Stafford, 46 T.C. 515 (1966). Where the evidence is convincing that the taxpayer has furnished more than one-half of the child's support, a dependency exemption will be allowed. Russell W. Boettiger, 31 T.C. 477 (1958); 417 Theodore Milgroom, 31 T.C. 1256 (1959); James E. Stafford, supra.However, where there is no evidence as to the total amount expended for support of the child during the taxable year and no evidence from which it can be reasonably inferred, it is not possible to conclude that the taxpayer has contributed more than one-half. James H. Fitzner, 31 T.C. 1252 (1959); James E. Stafford, supra. Petitioner was not unaware of this statutory framework. His petition, brief, and testimony at trial revealed an understanding of the import of establishing with some certitude the total amount of support from all *159 sources furnished his children in 1965 and 1966. He was also aware of the difficulty he would have in carrying his burden. Faced with the unavailability of his wife and her records of support expenditures, petitioner, nonetheless, attempted to show that the not insubstantial amounts of support credited to him in the stipulation ($2,080 in 1965 and $1,560 in 1966) did not reflect all of the support he proffered in these years and that when these additional items were credited to him, they would exceed what his wife could have provided given her salary of $2,901.60 based on a 52-week year. So, although petitioner would be unable to conclusively prove the total cost of his children's support in each of the years, he felt that he could establish, inferentially, the threshold amount of total support and that he did indeed provide more than onehalf of said amount. On the facts before us, however, we must conclude that petitioner has not carried his burden. Without resport to much speculation, we cannot infer with any confidence from the record the threshold amount of total support in either of the taxable years. Although petitioner has made a good cause for some additional support credit, *160 the record is not convincing that he furnished more than one-half of his children's support. The items of additional support claimed by petitioner were the following: Blue Cross-Blue Shield medical insurance coverage of his children by the family policy provided as a fringe benefit of his employment; the gifts of money made to his children on their birthdays and at Christmastime; and the rent Edith was receiving on part of the family house, use of said house having been awarded to Edith under the separation agreement and being the dwelling where Edith and the children resided during these years. That petitioner should receive credit for the medical insurance coverage of his children seems clear to us on the record herein. Medical insurance is an item of support and it was petitioner's efforts as a printer with Arcata Graphics which made this fringe benefit possible. Prorating the premium payments to reflect only the children's coverage under the policy, this item evidences $269.99 in additional support credit for petitioner ($134.99 per annum). Less clear, on the other hand, is how much, if any, of petitioner's monetary gifts were in the nature of support and whether he can even *161 claim at all any credit based on the $50 per month rentals going to Edith. The monetary gifts were never substantiated with clarity as to their frequency or amount. With such meager delineation, we cannot give petitioner additional credit therefor. In regard to the rentals directed to Edith for the purpose of paying home expenses, we do not regard them as an item petitioner can claim. Edith was given the exclusive right to possess and occupy the family house and it is arguable that this exclusive occupancy would attribute to her the value of such lodging in determining her share of support, even if her husband had been making the mortgage payments. Wood v. United States, 287 F. Supp. 90 (D. Ore. 1968). The value of such lodging would be its fair rental value. Rev. Rul. 58-302, 1958-1 C.B. 62. But aside from such considerations, these rentals were not designated as an item of child support in the order directing them to Edith. If Edith did indeed expend these rentals for home expenses equivalent to child support, it would seem that she should receive the credit for support, not petitioner. Being a joint owner of the house, it must be noted that any of *162 Edith's expenditures for mortgage payments and taxes would be for her benefit and not directly for the children's support. In any event, the rentals were never documented to this Court. Not only are we unsure as to their precise nature or amount, we do not know if they were actually expended for the children's support. At trial, petitioner's son, Gregory, who lived with his mother in 1965, testified with respect to the apparent insufficiency of his mother's support. Gregory had to turn to an uncle for additional clothing and to others for bus fare and lunch money needed in connection with his education. But Gregory did not turn to his father for 418 these items. Therefore, there was support flowing to Gregory from sources other than his parents. However inadequate his wife's support may have been, petitioner can gain no benefit therefrom. This aspect of the case only makes it more difficult for us to reasonably infer what the total cost of support was in the taxable period. We do not sustain respondent simply because the petitioner has not conclusively established a total support figure for either of the taxable years. Rather, our decision rests with petitioner's failure to *163 provide evidence from which we could reasonably infer what that amount was (even if not wholly precise) and his failure to convince us otherwise on the record that he was entitled to the exemptions. The record obfuscates petitioner's case instead of establishing his claim to the exemptions. Given her salary, some rent from the flat in the home, and the credit she would have received for the value of lodging furnished her children, Edith certainly had the resources to furnish more than one-half of the total support cost. Petitioner has made a case for some additional support credit, but his presentation falls short of proving his expenditures greater than what Edith could have expended. We are left with too much to speculate about and too little to convince us of the merit in petitioner's claim. Although we are very sympathetic with petitioner and aware of the difficulties inherent in his satisfying the statutory burden here, we cannot on the basis of what is before us decide in his behalf. Decision will be entered under Rule 50. Footnotes
1. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. ↩
2. (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - ↩
3. The support test was made substantially more complex for years beginning after December 31, 1966.↩