# United States Tax Court

T.C. Memo. 2026-7

ASIA ZAHEEN,
Petitioner,
AND KAMRAN EHSAN,
Intervenor

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 13863-22.                    Filed January 22, 2026.

———————

*Gerard J. Levins*, for petitioner.

*Louis S. Haskell* and *Patrick J. McKeon*, for intervenor.

*Philip M. Schreiber*, *Michael E. D'Anello*, and *Brittany M. Besler*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*: In this case petitioner, Asia Zaheen, seeks relief from joint and several liability for federal income tax obligations pursuant to section 6015.[1] Dr. Zaheen seeks relief from an income tax liability arising from an understatement of tax on the return she jointly filed with Kamran Ehsan, her soon-to-be former spouse and intervenor in this case, for taxable year 2019 (year in issue). Dr. Zaheen concedes that she is not entitled to relief under section 6015(b) or (c), which leaves

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** us to consider only whether she is entitled to equitable relief under section 6015(f) with respect to the deficiency and accuracy-related penalty determined for taxable year 2019.

For the reasons discussed below, we will grant full relief to Dr. Zaheen pursuant to section 6015(f) with respect to the deficiency and the accuracy-related penalty.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The Stipulation of Settled Issues, the First Stipulation of Facts, the Stipulation as to Admitted Trial Exhibits, and the Exhibits attached to each are incorporated herein by this reference. Dr. Zaheen resided in Massachusetts when she timely filed her Petition. Mr. Ehsan also resided in Massachusetts when he timely filed a Notice of Intervention. *See* Rule 325.

I.    *Dr. Zaheen, Mr. Ehsan, and Their Marriage and Finances*

Dr. Zaheen and Mr. Ehsan were married on February 1, 1998; one day after they met. On February 10, 1998, Dr. Zaheen and Mr. Ehsan moved to the United States from Pakistan. They subsequently had four children. Dr. Zaheen and Mr. Ehsan lived together in the family home until Dr. Zaheen filed a complaint of divorce on September 27, 2021. As of the date of trial in this case, their divorce remained pending.

During the year in issue Dr. Zaheen was self-employed as a physician at Zaheen Medical Center, a medical practice that, at the time, was jointly owned by Dr. Zaheen and Mr. Ehsan. Mr. Ehsan is an electrical engineer, and during the year in issue he performed engineering work on a contract basis. Dr. Zaheen became the sole owner of Zaheen Medical Center in connection with her and Mr. Ehsan's divorce proceedings. At the time of trial, Dr. Zaheen estimated she earns more than $300,000 per year from Zaheen Medical Center.

Zaheen Medical Center was established in 2018. In 2017, Dr. Zaheen and Mr. Ehsan purchased the property on which they would establish Zaheen Medical Center. At all times this property was titled solely in Dr. Zaheen's name because Mr. Ehsan was traveling out of the country when the transaction closed and, seeing divorce on the horizon, Dr. Zaheen insisted that it be placed in her name. Dr. Zaheen and Mr. Ehsan used funds from a home equity line of credit (HELOC) that they held with Citizens Bank to purchase the property. They also used funds

[*3] from the HELOC to acquire medical equipment and supplies needed for Zaheen Medical Center. As of January 19, 2019, Dr. Zaheen and Mr. Ehsan owed $291,939 on the HELOC.

### A. *Mr. Ehsan's Financial Control*

Dr. Zaheen generally felt discouraged from inquiring about or participating in the family's finances. Mr. Ehsan controlled the family's finances and opened the household's mail. Mr. Ehsan generally rebuffed Dr. Zaheen's attempts to participate in or inquire about the family's finances. Mr. Ehsan sharply scrutinized and criticized Dr. Zaheen's and the children's spending habits if they used a credit card or account that Mr. Ehsan could access. Dr. Zaheen could access only one account to which her salary from her medical practice was paid. Dr. Zaheen felt afraid to transfer funds out of or otherwise use funds from the joint accounts she held with Mr. Ehsan.

Mr. Ehsan also exerted financial control over Dr. Zaheen's medical practice. Despite his lack of a medical education, Mr. Ehsan claimed to be a partial owner and the chief executive officer of Zaheen Medical Center.[2] To Dr. Zaheen's exclusion, Mr. Ehsan had full control over Zaheen Medical Center's bank accounts. Mr. Ehsan viewed Dr. Zaheen as an employee of the business and, consistent with this treatment, paid Dr. Zaheen a salary. Accordingly, Dr. Zaheen did not enjoy typical benefits of ownership of Zaheen Medical Center during 2019. Other than in instances of employee bonuses and charitable giving, Mr. Ehsan would become aggressive if Dr. Zaheen sought to use funds from a Zaheen Medical Center account.

Dr. Zaheen testified that Mr. Ehsan asserted at times that she was his property, that he was entitled to her earnings, and that all of their property was his. In 2017, Dr. Zaheen explicitly asked Mr. Ehsan not to use funds from her retirement account for his business ventures. Mr. Ehsan would often communicate threats against Dr. Zaheen and the children in conjunction with financial demands, including that Dr. Zaheen sign documents. Further, Mr. Ehsan threatened that he would leave Dr. Zaheen financially ruined if she ever attempted to divorce him.

---

[2] We take judicial notice that Massachusetts law prohibits an individual or business entity not licensed to practice medicine from owning or controlling a medical practice. *See* Mass. Gen. Laws ch. 112, §§ 2, 6 (2025); *McMurdo v. Getter*, 10 N.E.2d 139, 141–42 (Mass. 1937); 243 Mass. Code Regs. 2.07(22) (2025).

[*4]   B.   *Marital Abuse*

Since they were married in 1998, and through the years in issue, Mr. Ehsan subjected Dr. Zaheen to various forms of abuse. Mr. Ehsan generally had a short temper and on occasion broke plates and glasses in front of their children if they did not obey him. In one instance, which the children also witnessed, Mr. Ehsan berated Dr. Zaheen and strangled her for eating chocolate. For years during their marriage, Dr. Zaheen frequently slept separately from Mr. Ehsan out of fear of sexual abuse. He once dragged her from the separate room to the room that he was sleeping in, locked the door, and threatened to harm the children if she did not have sexual intercourse with him.

On various occasions, and in Dr. Zaheen's presence, Mr. Ehsan's violence was also directed at their eldest son. In 2018, because he perceived a lack of obedience, Mr. Ehsan used his knee to press against their eldest son's neck while screaming at him. In or around 2020, Mr. Ehsan broke a piece of wood off a plant holder and threatened to stab the eldest son with it before Dr. Zaheen intervened to protect him.

On September 14, 2021, Dr. Zaheen approached Mr. Ehsan to inform him that she was filing for divorce and to ask for the business files and records pertaining to Zaheen Medical Center. While Dr. Zaheen was looking for the documents, Mr. Ehsan became violent; he verbalized threats to Dr. Zaheen, pushed her away from the documents, and snatched the documents from her. Dr. Zaheen called the police to report Mr. Ehsan's actions. Following an investigation, police determined that there was probable cause that Mr. Ehsan committed assault and battery against Dr. Zaheen. On August 23, 2022, Mr. Ehsan entered a conditional tender of plea or admission in connection to the assault and battery charge in which he "admi[tted] to facts sufficient for a finding of guilty," and the case was continued without finding.

On September 15, 2021, Dr. Zaheen applied for and was granted an abuse prevention order against Mr. Ehsan on the basis of the events that occurred the day before. Also stemming from the September 14, 2021, incident, the Massachusetts Department of Child and Family Services (DCF) investigated Mr. Ehsan for allegations of neglect. Dr. Zaheen reported to the Massachusetts DCF that she was the victim of years of significant abuse. The DCF concluded that in response to Mr. Ehsan's abuse and threats, the children exhibited fear and numbed emotions.

**[\*5]**    The DCF investigation included an interview with the family's housekeeper, Hilda Rola, who corroborated Dr. Zaheen's and the children's allegations of abuse. On October 21, 2021, the DCF concluded that Dr. Zaheen's two youngest children had witnessed years of significant and ongoing domestic violence.

II.    *The Deficiency, Tax Reporting, and Examination*

In 2017, Dr. Zaheen and Mr. Ehsan established the KME Investment Trust, which held the Asia Kamran, LLC Solo section 401(k) retirement plan, a self-directed section 401(k) retirement plan. Mr. Ehsan signed the trust documents on behalf of Asia Kamran, LLC, the settlor of the trust. Dr. Zaheen signed the trust documents upon Mr. Ehsan's representation that doing so would save them money on taxes, but was otherwise unaware of Mr. Ehsan's intentions for creating the trust. Both Dr. Zaheen and Mr. Ehsan were trustees of the KME Investment Trust, and each had independent authority to act on behalf of the trust.

Dr. Zaheen and Mr. Ehsan used funds Dr. Zaheen held in a section 401(k) retirement account with Merrill Lynch (Merrill Lynch account) to pay down the debt incurred on the HELOC to avoid paying additional interest. Mr. Ehsan represented that he would use the proceeds from his other business and the sale of other property he held to replace the funds withdrawn from the Merrill Lynch account within 30 days.

On January 14, 2019, a withdrawal of $257,907 was made from Dr. Zaheen's Merrill Lynch account by check. The funds were deposited into the KME Investment Trust. The rollover to the KME Investment Trust was not a taxable transaction to Dr. Zaheen and Mr. Ehsan.

Following the untaxed rollover, nearly all of the funds transferred to the KME Investment Trust were used to pay down the HELOC balance. Specifically, from January 25 to 31, 2019, a total of $257,000 was withdrawn in three transactions from the KME Investment Trust and transferred to the HELOC. An additional $700 was withdrawn and transferred to a separate, unrelated account. The parties do not dispute that the series of withdrawals, totaling $257,700, were taxable transactions.

In February 2019, Dr. Zaheen requested that Mr. Ehsan share the password to her Merrill Lynch account in order for her to confirm that the withdrawn funds had been returned. Mr. Ehsan refused to

**[\*6]** provide the password and replied that she needed to trust and believe her husband. Believing the funds had been replaced and unwilling to risk provoking Mr. Ehsan's anger at her or their children, Dr. Zaheen did not inquire further about the balance of her Merrill Lynch account.

Dr. Zaheen and Mr. Ehsan elected to file a joint Form 1040, U.S. Individual Income Tax Return, for taxable year 2019, which reported that they had a tax liability of $116,212. Their 2019 Form 1040 did not report the second series of (taxable) withdrawals from the KME Investment Trust.

Dr. Zaheen first learned, in December 2021, that the $257,907 withdrawn from her Merrill Lynch account was not timely replaced when she received a letter from the Internal Revenue Service (IRS) that identified the unreported income. On February 28, 2022, the IRS issued to Dr. Zaheen and Mr. Ehsan, each, a copy of the Notice of Deficiency at issue in this case, determining a deficiency of $120,510 and a section 6662(a) accuracy-related penalty of $24,102 on the basis of the unreported retirement distributions.[3]

## OPINION

### I. *Jurisdiction*

The Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. § 7442; *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *see also* Rules 13(a) and (b), 320(b). There are three jurisdictional bases for the Court to review a taxpayer's entitlement to section 6015 relief. *See Maier v. Commissioner*, 119 T.C. 267, 270–71 (2002), *aff'd*, 360 F.3d 361 (2d Cir. 2004). First, a spouse can file a stand-alone petition pursuant to section 6015(e)(1). *Maier*, 119 T.C. at 270–71. Second, the Court can review the claim in the context of a collection due process (CDP) case under section 6330(c)(2)(A)(i). *Maier*,

---

[3] The Notice of Deficiency mailed to Dr. Zaheen and Mr. Ehsan determined that the withdrawal of the $257,907 from Dr. Zaheen's Merrill Lynch account was the unreported distribution that gave rise to the deficiency in this case. Following the filing of the Petition, the parties' discussions revealed, and the parties ultimately stipulated, that the rollover of the $257,907 from the Merrill Lynch retirement account to the KME Investment Trust was a qualified rollover and not a taxable transaction. The parties further stipulated that the subsequent withdrawals totaling $257,700 from the KME Investment Trust to pay down the HELOC were taxable to Dr. Zaheen and Mr. Ehsan.

**[\*7]** 119 T.C. at 271. Third, the claim can be asserted by a spouse as an affirmative defense in a proceeding to redetermine a deficiency pursuant to section 6213(a). *Maier*, 119 T.C. at 270 (citing *Butler v. Commissioner*, 114 T.C. 276, 287–89 (2000), *abrogated on other grounds by Porter v. Commissioner*, 132 T.C. 203 (2009)).

Dr. Zaheen timely filed the Petition seeking redetermination of the adjustments in the Notice of Deficiency. While she conceded the adjustments, she asserted innocent spouse relief as a defense. Accordingly, this Court has jurisdiction under section 6015(e) to review Dr. Zaheen's request for relief for taxable year 2019.

Respondent concedes that Dr. Zaheen is entitled to innocent spouse relief pursuant to section 6015(f). However, pursuant to section 6015(e)(4) and Rule 325, on November 16, 2022, Mr. Ehsan filed a Notice of Intervention and became a party to this case, opposing relief.

II.  *Evidentiary Issue*

At trial Dr. Zaheen offered into evidence four documents that were marked for identification as Petitioner's Proposed Exhibits 9 through 12. Mr. Ehsan objected to the admission of Petitioner's Proposed Exhibits 9 through 12 on the grounds that they are not relevant, are more prejudicial than probative, and contain inadmissible hearsay. The Court reserved its ruling with respect to their admission and directed the parties to argue on brief whether the Exhibits should be admitted.

Respondent was the only party to present an argument on brief regarding the admissibility of Petitioner's Proposed Exhibits 9 through 12. Both Dr. Zaheen, the proponent of the proposed Exhibits, and Mr. Ehsan, the party that objected to their admission, declined to address their admissibility in their opening briefs. We find that Dr. Zaheen forfeited her arguments with regard to the admission of Proposed Exhibits 9 through 12.[4] *See Mendes v. Commissioner*, 121 T.C. 308, 312–13 (2003); *Midkiff v. Commissioner*, 96 T.C. 724, 734 (1991) (finding that party abandoned their objection to offered evidence where they failed to argue its admissibility on brief after Court reserved ruling), *aff'd sub nom. Noguchi v. Commissioner*, 992 F.2d 226 (9th Cir. 1993).

---

[4] Alternatively, from our review of the record, admission of the disputed Exhibits would not alter the outcome of this case, and we therefore decline to consider their admissibility.

[*8] III.    *Scope and Standard of Review*

Our scope of review is limited to the administrative record established at the time of the Commissioner's determination, if any, and any newly discovered or previously unavailable evidence. § 6015(e)(7). Because there was no administrative proceeding relating to this case, and because it would be considered previously "unavailable evidence," we will consider Dr. Zaheen's and Mr. Ehsan's trial testimony. *See Thomas v. Commissioner*, 162 T.C. 9, 20 (2024) (first citing *Freman v. Commissioner*, T.C. Memo. 2023-10, at *10; and then citing *Sleeth v. Commissioner*, T.C. Memo. 2019-138, at *3, *aff'd*, 991 F.3d 1201 (11th Cir. 2021)). We apply a de novo standard of review to any claim for innocent spouse relief under section 6015. § 6015(e)(7); *see Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act, Pub. L. No. 116-25, § 1203, 133 Stat. 981, 988 (2019).

Dr. Zaheen, as the requesting spouse, generally bears the burden of proving that she is entitled to relief. *See* Rule 142(a); *Porter*, 132 T.C. at 210. However, to the extent that the Commissioner is no longer an adverse party to the taxpayer and the intervenor opposes relief, it is an open question whether the burden of proof would shift to the intervenor. *See Hollimon v. Commissioner*, T.C. Memo. 2015-157, at *7. We need not decide whether the burden of proof shifts in the instant case because we decide the issues by a preponderance of the evidence. *See id.*; *see also Porter*, 132 T.C. at 214.

IV.    *Witness Credibility*

In deciding whether a taxpayer has proven her case, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at *7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life." *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at *3. Generally, we found Dr. Zaheen's, the children's, and Ms. Rola's testimony to be credible. In contrast, we found most, but not all, of Mr. Ehsan's testimony to be lacking in credibility, sincerity, and candor.

V.    *Section 6015(f)*

Married taxpayers may elect to file a joint federal income tax return. § 6013(a). If a joint return is made, (1) the tax is computed on

[*9] the spouses' aggregate income, (2) each spouse is fully responsible for the accuracy of the return, and (3) each spouse is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. § 6013(d)(3); *Butler*, 114 T.C. at 282. Nevertheless, section 6015 provides three potential avenues and procedures for relief from joint and several liability: (1) full or partial relief for an understatement of tax under section 6015(b), (2) proportionate relief for an understatement of tax under section 6015(c), and (3) full or partial equitable relief for an understatement or underpayment of tax under section 6015(f).

Because all parties agree that Dr. Zaheen does not qualify for innocent spouse relief for tax year 2019 under section 6015(b) or (c), she may seek, *see* § 6015(f)(1)(B), and we now consider her entitlement to, equitable relief under section 6015(f).

Section 6015(f) provides relief from joint and several liability if, under the facts and circumstances, it is inequitable to hold the requesting spouse liable for any unpaid tax or any deficiency (or any portion thereof). § 6015(f)(1)(A); *Porter*, 132 T.C. at 206; Treas. Reg. § 1.6015-4(a).

Treasury Regulation § 1.6015-4(c) directs us to Revenue Procedure 2013-34, 2013-43 I.R.B. 397, for relevant guidance.[5] Revenue Procedure 2013-34 sets forth a three-step analysis for evaluating section 6015(f) claims for relief: (1) the requesting spouse must satisfy the seven threshold requirements, Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399–400; (2) the requesting spouse must satisfy the three-part test for streamlined relief, *id.* § 4.02, 2013-43 I.R.B. at 400; or (3) if a requesting spouse does not satisfy the test for streamlined relief, the requesting spouse may still qualify for relief from joint and several liability if it would be inequitable to hold the spouse liable in the light of the nonexclusive list of factors outlined in Revenue Procedure 2013-34, § 4.03, 2013-43 I.R.B. at 400–03. Although the Court considers those procedures when reviewing a claim for innocent spouse relief, the Court is not bound by them. *Leith v. Commissioner*, T.C. Memo. 2020-149, at *19.

A.   *Threshold Requirements*

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34,

---

[5] Rev. Proc. 2000-15, 2000-1 C.B. 447, *superseded by* Rev. Proc. 2003-61, 2003-2 C.B. 296, *superseded by* Rev. Proc. 2013-34, 2013-43 I.R.B. 397.

**[\*10]** § 4.01. Those requirements are (a) the requesting spouse filed a joint return for the taxable year for which relief is sought; (b) relief is not available to the requesting spouse under section 6015(b) or (c); (c) the claim for relief is timely filed; (d) no assets were transferred between the spouses as part of a fraudulent scheme; (e) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (f) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (g) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Rev. Proc. 2013-34, § 4.01.

The parties agree that (1) Dr. Zaheen and Mr. Ehsan filed a joint return for the taxable year in issue, (2) Dr. Zaheen is not eligible for relief under section 6015(b) or (c), and (3) Dr. Zaheen's claim for relief was timely. There is no evidence in the record indicating that Dr. Zaheen and Mr. Ehsan transferred assets as a fraudulent scheme, transferred disqualified assets, or knowingly filed a fraudulent return. *See* Rev. Proc. 2013-34, § 4.01(1)–(6), 2013-43 I.R.B. at 399.

We now turn to the final threshold requirement: To be eligible for relief under section 6015(f) a requesting spouse, such as Dr. Zaheen, must show that the income tax liability from which she seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. *See* Rev. Proc. 2013-34, § 4.01(7), 2013-43 I.R.B. at 399–400. This rule is subject to a number of exceptions, including situations in which attribution is solely due to the operation of community property laws, nominal ownership, misappropriation of funds, abuse, or fraud committed by the nonrequesting spouse. *Id.*

Dr. Zaheen argues that she qualifies for an exception to the final threshold requirement because the understatement of tax is attributable to her solely as a result of abuse committed by the nonrequesting spouse leading up to and during 2019. Mr. Ehsan argues that the allegations of abuse are baseless. He argues alternatively that Dr. Zaheen did not allege abuse with sufficient specificity, *see Nihiser v. Commissioner*, T.C. Memo. 2008-135, 2008 WL 2120983, at \*9, and to the extent the allegations are credible, that any found abuse was not significant enough to warrant the relief Dr. Zaheen has requested.

"In deciding the issue of to whom inaccurate, false, or 'phony' tax items are attributable, the Court has generally attributed such items to

**[\*11]** the spouse who wrongfully reported or claimed them." *Pocock v. Commissioner*, T.C. Memo. 2022-55, at \*19 (citing *Leith*, T.C. Memo. 2020-149, at \*7 n.6). Despite the deficiency at issue stemming from taxable distributions sourced from Dr. Zaheen's section 401(k) retirement account, the record establishes that Mr. Ehsan (1) had full control of the marital finances including the retirement account in question, (2) used verbal abuse and threats of physical harm to deter her from inquiring about or participating in his business dealings, and (3) used deceptive tactics to prevent Dr. Zaheen from learning of the full nature of the transaction leading to the deficiency. Under these circumstances, we agree with Dr. Zaheen that she satisfies the final threshold requirement.

### B.     *Streamlined Determination Elements*

Revenue Procedure 2013-34, § 4.02, sets forth circumstances under which the Commissioner will make a streamlined determination granting equitable relief to the requesting spouse. These include that she establishes that she (a) is no longer married to the nonrequesting spouse, (b) would suffer economic hardship if not granted relief, and (c) did not know or have reason to know that there was an understatement or deficiency on the joint income tax return or did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return. *Id.* Dr. Zaheen concedes that she would not suffer economic hardship if not granted relief, and we therefore need not further consider her eligibility for a streamlined determination of relief. We now proceed to the full equitable relief analysis.

### C.     *Full Equitable Relief Analysis*

Under the full equitable relief analysis of section 6015(f), the Court will consider the following factors: (a) current marital status; (b) whether the requesting spouse would suffer economic hardship if relief were not granted; (c) in understatement cases, whether the requesting spouse knew or had reason to know of the item giving rise to the understatement and the effect of any spousal abuse or financial control; (d) whether either spouse has a legal obligation to pay the outstanding federal income tax liability; (e) whether the requesting spouse significantly benefited from the understatement or underpayment; (f) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the tax years for which relief is sought; and (g) whether the requesting spouse

**[\*12]** was in poor mental or physical health at the time the joint return was filed. Rev. Proc. 2013-34, § 4.03(2), 2013-43 I.R.B. at 400–03. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." *See Rawat v. Commissioner*, T.C. Memo. 2024-56, at \*7 (quoting Rev. Proc. 2013-34, § 4.03(2)). The Court can also consider any other relevant facts. *Id.*

### 1. *Current Marital Status*

This condition favors relief if the requesting spouse is no longer married to the nonrequesting spouse. Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400. If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. *Id.* A requesting spouse is treated as being no longer married to the nonrequesting spouse if the requesting spouse is legally separated from the nonrequesting spouse under applicable state law. *Id.* § 4.03(2)(a)(ii), 2013-43 I.R.B. at 400. Massachusetts law permits individuals who are married but live separately from their spouse to seek marital support but does not recognize legal separation as a marital status. *See, e.g.*, *Boyer v. Commissioner*, 732 F.2d 191, 194–95 (D.C. Cir. 1984), *rev'g* 79 T.C. 143 (1982); *Wilson v. Wilson*, 206 N.E.2d 155, 156 (Mass. 1965); *Slavinsky v. Slavinsky*, 190 N.E. 826, 827 (Mass. 1934). Accordingly, because Dr. Zaheen's complaint for divorce is still pending, she remains married and this factor is neutral.

### 2. *Economic Hardship*

This factor weighs in favor of relief when a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses. Rev. Proc. 2013-34, § 4.03(2)(b), 2013-43 I.R.B. at 401. If denying relief would not cause the requesting spouse economic hardship, this factor is neutral. *Id.* As discussed *supra* Part V.B, Dr. Zaheen conceded that she would not suffer economic hardship. Accordingly, this factor is neutral.

### 3. *Knowledge or Reason to Know*

This factor weighs in favor of relief if the requesting spouse did not know or have reason to know of the item giving rise to the understatement as of the date the joint return was filed. *Id.* § 4.03(2)(c)(i)(A), 2013-43 I.R.B. at 401. This factor weighs against relief if the requesting spouse knew or had reason to know of the item giving rise to the understatement as of the date the joint return was filed. *Id.*

[*13] However, knowledge may be mitigated in instances where there is abuse or financial control by the nonrequesting spouse. *See id.* § 4.03(2)(c)(i) and (ii).

a.     *Actual Knowledge*

Revenue Procedure 2013-34 is silent on actual knowledge with respect to understatements of tax. However, we find that the regulations applicable to knowledge under section 6015(b) and (c) provide a helpful framework for analysis under section 6015(f). *See, e.g., Butler*, 114 T.C. at 292–93 (applying the same knowledge analysis performed under section 6015(b) to section 6015(f)); *Jacobsen v. Commissioner*, T.C. Memo. 2018-115, at *27 (applying the same knowledge analysis performed under section 6015(b) to section 6015(f)), *aff'd*, 950 F.3d 414 (7th Cir. 2020).

A spouse lacks actual knowledge if she is unaware of the circumstances that give rise to the error on the tax return. *Soler v. Commissioner*, T.C. Memo. 2022-78, at *7 (citing *Bokum v. Commissioner*, 94 T.C. 126, 145–46 (1990), *aff'd*, 992 F.2d 1132 (11th Cir. 1993)). We must consider all facts and circumstances when determining whether a requesting spouse had actual knowledge of an understatement. Treas. Reg. §§ 1.6015-2(c), 1.6015-3(c)(2)(iv). In the case of omitted income, actual knowledge generally means knowledge of receipt of the income. Treas. Reg. §§ 1.6015-2(c), 1.6015-3(c)(2)(i)(A).

Here, the income that gave rise to the understatement of tax was the second series of transfers, totaling $257,700, from the KME Investment Trust to pay down the HELOC account; and not the $257,907 in withdrawals from Dr. Zaheen's Merrill Lynch account. While the record establishes that Dr. Zaheen possessed actual knowledge of the initial withdrawal from her Merrill Lynch account, Dr. Zaheen credibly testified that she was essentially unaware of the KME Investment Trust and that she signed the papers to establish it only upon Mr. Ehsan's representation that it would save them money on taxes. Further, when Dr. Zaheen questioned him about the transfers from her Merrill Lynch account to the trust, Mr. Ehsan represented to Dr. Zaheen that the funds would be returned within a short time to avoid additional tax and penalties.

Dr. Zaheen first learned, in December 2021, that the $257,907 withdrawn from her Merrill Lynch account was not replaced or rolled over within 30 days when she received a notice letter from the IRS.

**[\*14]** Under these circumstances, we hold that Dr. Zaheen did not have actual knowledge of the withdrawal of the $257,700 from the KME Investment Trust.

b.    *Reason to Know*

A spouse has reason to know of an understatement of tax if a reasonable person in similar circumstances would have known that the return contained an understatement or that further investigation was warranted. *Butler*, 114 T.C. at 283; Treas. Reg. § 1.6015-2(c). The factors we consider in evaluating whether a requesting spouse had reason to know of an understatement include, but are not limited to, (1) the requesting spouse's level of education; (2) the requesting spouse's level of involvement in the activity giving rise to the understatement; (3) any deceit or evasiveness by the nonrequesting spouse; (4) the requesting spouse's degree of involvement in business or household financial matters; (5) the requesting spouse's business or financial expertise; and (6) any lavish or unusual expenditures compared with past spending. Rev. Proc. 2013-34, § 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

A taxpayer who signs a return is generally charged with constructive knowledge of its contents. *Hayman v. Commissioner*, 992 F.2d 1256, 1262 (2d Cir. 1993), *aff'g* T.C. Memo. 1992-228. In establishing that a requesting spouse had no reason to know, the requesting spouse must show that she was unaware of the circumstances that gave rise to the error and not merely unaware of the tax consequences. *Bokum*, 94 T.C. at 145–46; *Purcell v. Commissioner*, 86 T.C. 228, 237–38 (1986), *aff'd*, 826 F.2d 470 (6th Cir. 1987). Section 6015 does not protect a spouse who turns a blind eye to facts readily available to her. *Charlton v. Commissioner*, 114 T.C. 333, 340 (2000). In such instances, we may impute the requisite knowledge to the requesting spouse unless she satisfies her duty of inquiry. *Hayman v. Commissioner*, 992 F.2d at 1262.

Dr. Zaheen is well educated and works as a physician. She signed the joint 2019 tax return without reviewing it, and therefore did not satisfy her duty of inquiry. *See id.* When she attempted to inquire about whether the funds withdrawn from her Merrill Lynch account had been returned, Mr. Ehsan represented to her that the withdrawn funds were returned and that she should trust him, and he continued preventing her from confirming his statements for herself. We find that Dr. Zaheen had reason to know of the understatement because she did not review the return before signing it and because a reasonable person would have

**[\*15]** been alerted to potential issues by Mr. Ehsan's secrecy and defensiveness with respect to her retirement account.

### c.     *Abuse and Financial Control*

Notwithstanding our finding that Dr. Zaheen had reason to know of the income that ultimately led to the understatement of tax for taxable year 2019, the analysis is subject to an exception. Knowledge may be negated if the nonrequesting spouse abused the requesting spouse or maintained control of the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging the understatement on the return or the underpayment of the liability. Rev. Proc. 2013-34, § 4.03(2)(c)(i), (iv), 2013-43 I.R.B. at 400.

### i.     *Abuse*

Dr. Zaheen alleges that she was a victim of abuse in years leading up to and during the tax year in issue. "Abuse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws." *Id.* § 4.03(2)(c)(iv); *see, e.g.*, *Leith*, T.C. Memo. 2020-149, at \*27.

This Court takes all facts and circumstances into account in determining the presence of abuse, and requires substantiation, or at a minimum, specificity, with regard to allegations of abuse. Rev. Prov. 2013-34, § 4.03(2)(c)(iv); *see Nihiser v. Commissioner*, 2008 WL 2120983, at \*9–11. A generalized claim of abuse is insufficient. *See Thomassen v. Commissioner*, T.C. Memo. 2011-88, 2011 WL 1518446, at \*12, *aff'd*, 564 F. App'x 885 (9th Cir. 2014).

Dr. Zaheen credibly testified about the extensive abuse that she endured from Mr. Ehsan. She testified with specificity and particularity as to numerous instances in which he became aggressive towards her or the children. She and the two eldest children recounted instances in which Mr. Ehsan strangled her for eating chocolate, dragged Dr. Zaheen from another bedroom into his to force her to sleep with him, and became violent with their eldest child. Further indicative of Mr. Ehsan's history of abuse is the September 2021 incident when Mr. Ehsan reacted aggressively to her attempt to gain access to the business records and files for Zaheen Medical Center.

**[\*16]** We found Dr. Zaheen's testimony credible, and her testimony was generally corroborated by the two eldest children and the family's housekeeper, Ms. Rola. Further, Dr. Zaheen's testimony is supported by Mr. Ehsan's admission in his criminal case and the findings of investigations conducted by local police and the Massachusetts DCF. We find Dr. Zaheen's allegations of abuse significant enough to negate our finding that she had reason to know of the item giving rise to the understatement. Considering the totality of Dr. Zaheen's circumstances when the joint returns were filed, we do not believe she could have questioned their accuracy without risking her or her children's safety. *See Pocock*, T.C. Memo. 2022-55, at \*25–27.

ii.    *Financial Control*

Dr. Zaheen alleges that, despite her being the primary earner, Mr. Ehsan controlled nearly all financial matters for the household and Zaheen Medical Center in 2019. Mr. Ehsan claimed the title of chief executive officer and that he was a joint owner of Zaheen Medical Center and controlled all of the business aspects of its operation. This is despite Massachusetts' prohibition on nonphysicians owning or controlling a medical practice, and it is indicative of the unreasonable nature of control that Mr. Ehsan exerted over Dr. Zaheen. Dr. Zaheen testified further that beyond using her salary to provide groceries and school tuition for their children, she chose not to participate in household finances or their business ventures because of Mr. Ehsan's tendency to become aggressive and threaten her and the children when she would inquire.

Dr. Zaheen did not participate in the preparation of the tax return for the year in issue. Mr. Ehsan retained an accountant to prepare the return and then presented it to Dr. Zaheen for signature. As with other financial documents, Mr. Ehsan did not give Dr. Zaheen a reasonable opportunity to review the document but demanded her signature. Even if she had had a reasonable opportunity to review its accuracy, Mr. Ehsan's exertion of financial control over Dr. Zaheen—notably by restricting her access to her own, and joint, financial accounts—would have prevented her from ascertaining the return's inaccuracy.

Further, Dr. Zaheen made reasonable efforts to inquire about the transaction that ultimately led to the deficiency. She requested that he share the password to her Merrill Lynch account so that she could confirm that he returned the withdrawn funds but was met with demands for obedience and trust.

**[\*17]** In the light of all the facts and circumstances, we find that to the extent Dr. Zaheen had actual knowledge of the transaction giving rise to the tax liability for tax year 2019, her knowledge was negated by Mr. Ehsan's abuse and financial control. *See Freman*, T.C. Memo. 2023-10, at \*30 (finding requesting spouse entitled to partial relief because of nonrequesting spouse's financial control); *Robinson v. Commissioner*, T.C. Memo. 2020-134, at \*28–29 (finding requesting spouse entitled to relief because of nonrequesting spouse's financial control); *Molinet v. Commissioner*, T.C. Memo. 2014-109, at \*12 (finding requesting spouse entitled to relief because of nonrequesting spouse's financial control); *Waldron v. Commissioner*, T.C. Memo. 2011-288, 2011 WL 6259685, at \*4–5 (finding requesting spouse entitled to partial relief from liability).

We find that this factor weighs in favor of granting Dr. Zaheen relief from the understatement of tax for taxable year 2019. Mr. Ehsan's marital abuse prevented Dr. Zaheen from reasonably inquiring about the accuracy of the joint return, and he assumed and maintained sole control of the finances. Mr. Ehsan excluded Dr. Zaheen from involvement, rebuffed her attempts to be involved except when he was obligated to involve her, did not give her a reasonable opportunity to review the returns or relevant financial accounts, and misled her about his actions with regard to the distribution from the Merrill Lynch account.

### 4. *Legal Obligation*

This factor weighs in favor of relief when the nonrequesting spouse, through a divorce decree or other legally binding agreement, bears the sole legal obligation to pay the outstanding liability. Rev. Proc. 2013-34, § 4.03(2)(d), 2013-43 I.R.B. at 402. This factor weighs against relief if the requesting spouse has the legal obligation to pay, and it is neutral if the divorce decree is silent as to tax liabilities or the spouses are not separated or divorced. *Id.* Because Dr. Zaheen and Mr. Ehsan's divorce has not been finalized, and no divorce decree has been issued, we find this factor to be neutral in our analysis.

### 5. *Significant Benefit*

This factor weighs in favor of relief if the requesting spouse did not receive a significant benefit, that is, a benefit in excess of normal

[*18] support, due to the understatement of tax.[6] *Soler*, T.C. Memo. 2022-78, at *12–13 (citing *Butner v. Commissioner*, T.C. Memo. 2007-136). This factor weighs against relief if the requesting spouse received a significant benefit due to the understatement of tax. Rev. Proc. 2013-34, § 4.03(2)(e). In cases where both spouses shared the benefit of the item of income at issue and neither spouse enjoyed a particularly lavish lifestyle, this factor can be viewed as neutral. *See Sutherland v. Commissioner*, T.C. Memo. 2021-110, at *12. Further, if the nonrequesting spouse controlled the household and business finances or there was abuse such that the nonrequesting spouse made the decision on spending funds for a lavish lifestyle, then this factor is neutral. Rev. Proc. 2013-34, § 4.03(2)(e).

The income that gave rise to the understatement in this case was used to pay down debt incurred to purchase real estate and medical equipment needed to establish Zaheen Medical Center. Dr. Zaheen is now the sole owner of Zaheen Medical Center, but Mr. Ehsan, at minimum, shared enjoyment of the benefit of the transaction at issue up until Dr. Zaheen filed for divorce. The benefit Dr. Zaheen derived from the understatement is mitigated by the fact that Mr. Ehsan controlled Zaheen Medical Center's finances and business matters through the year in issue and remitted to Dr. Zaheen only a salary. Additionally, there is no evidence in the record that suggests the parties engaged in a lavish lifestyle. Under these circumstances, we find this factor to be neutral in our analysis.

### 6. *Compliance with Income Tax Laws*

This factor is neutral if the requesting spouse remains married to and continues filing compliant joint tax returns with the nonrequesting spouse after requesting relief. *Id.* § 4.03(2)(f)(ii), 2013-34 I.R.B. at 402–03. This factor weighs in favor of relief if the requesting spouse remains married to the nonrequesting spouse, but the requesting spouse files compliant separate returns. *Id.* § 4.03(2)(f)(iii), 2013-34 I.R.B. at 403. This factor will weigh against relief if the requesting spouse is not in compliance with the tax laws for the tax years after her request for innocent spouse relief. *Id.* § 4.03(2)(f)(ii) and (iii). This factor is neutral if the requesting spouse has made a good faith effort to comply with the tax laws but was unable to fully comply. *Id.* § 4.03(2)(f)(iii). There is no

---

[6] The Court treats a lack of a significant benefit to the requesting spouse as favoring relief despite the fact that Revenue Procedure 2013-34 treats this factor as neutral. *Compare Robinson*, T.C. Memo. 2020-134, at *33–34, *with* Rev. Proc. 2013-34, § 4.03(2)(e), 2013-43 I.R.B. at 402.

[*19] evidence in the record of Dr. Zaheen's compliance or noncompliance with the tax laws, and we find this factor to be neutral.

### 7. *Mental or Physical Health*

This factor weighs in favor of relief if the requesting spouse was in poor physical or mental health at the time the returns from which she seeks relief were filed, or at the time she requested relief. *Id.* § 4.03(2)(g), 2013-34 I.R.B. at 403. If the requesting spouse was in neither poor mental nor poor physical health, this factor is neutral. *Id.* The record establishes that Dr. Zaheen was a victim of years of verbal and physical abuse. She testified that she felt stressed and depressed as a result of the abuse while in the relationship, as well as from the legal proceedings pertaining to the divorce. Further, Mr. Ehsan concedes on brief that Dr. Zaheen's mental and physical health has been negatively affected during the pendency of their divorce. Thus, this factor weighs in favor of relief.

Considering the foregoing factors, we conclude that it would be inequitable to hold Dr. Zaheen liable for the understatement of tax for the year in issue. Accordingly, we find that Dr. Zaheen qualifies for relief pursuant to section 6015(f) for the taxable year in issue.

## VI. *Conclusion*

We conclude that Dr. Zaheen is eligible for full relief pursuant to section 6015(f) with respect to the understatement of tax attributable to Dr. Zaheen and Mr. Ehsan's 2019 joint return.

The Court has considered all the other contentions of the parties and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

*An appropriate decision will be entered.*